United States Court of Appeals,

Fifth Circuit.

No. 92-7714.

The JOHN G. AND MARIE STELLA KENEDY MEMORIAL FOUNDATION,
Plaintiff-Appellant,

v.

Garry MAURO, Commissioner of the General Land Office, et al.,
Defendants-Appellees.

May 27, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before KING and BARKSDALE, Circuit Judges, and PARKER,[*] District
Judge.

KING, Circuit Judge:

The John G. and Marie Stella Kenedy Memorial Foundation (the
Foundation) appeals the district court's dismissal of its claim
brought under 42 U.S.C. § 1983 against Garry Mauro (Mauro),
Commissioner of the Texas General Land Office, in his official
capacity, and its Fifth Amendment inverse condemnation claim
against the State of Texas.  The Foundation also appeals the
district court's denial of its motion for partial summary judgment.
We affirm the district court's judgment of dismissal and vacate
that portion of the judgment denying the Foundation's motion for
partial summary judgment.

## I. BACKGROUND

In January 1990, the Foundation filed suit against Mauro and

---

[*]Chief Judge of the Eastern District of Texas, sitting by
designation.

the State of Texas in Texas state court in Kenedy County, Texas. The Foundation sought declaratory and injunctive relief to determine boundary and title to certain real property against Mauro, in his capacity as Commissioner of the Texas General Land Office, under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution, as well as under state common law. The Foundation also asserted a takings claim against the State of Texas under Article 1, Section 17 of the Texas Constitution.

The Foundation specifically contended that Mauro, acting under color of state law, refused to recognize the proper location of the boundary between the Foundation's property and state-owned land in Kenedy County. The property at issue is part of the original Spanish and Mexican grants, La Barreta and Las Motas de la Barreta, respectively, and is sometimes covered by the body of water known as the Laguna Madre. The Foundation argued that although title to portions of the disputed land had been effectively adjudicated to the State in *Humble Oil & Refining Co. v. Sun Oil Co.,* 190 F.2d 191 (5th Cir.1951), *cert. denied,* 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 687 (1952), there had since been a change in both the physical characteristics of the disputed land and in state law interpreting its physical boundaries by virtue of the Texas Supreme Court's holding in *Luttes v. State,* 324 S.W.2d 167 (Tex.1959). Hence, according to the Foundation, an application of *Luttes* would establish that the State's claim to the disputed land was no longer valid. Although the Foundation conceded that Mauro had the statutory authority to determine the boundary between private

2

property and state-owned submerged land, Mauro's refusal to recognize *Luttes* as controlling—while he continued to grant mineral leases on a portion of the disputed property for the State's benefit—amounted to a deprivation of the Foundation's real property without due process of law.

In February 1990, Mauro and the State (the defendants) removed the case to the United States District Court for the Southern District of Texas on the basis of federal question jurisdiction. In its original answer filed in federal court, the defendants stated that the district court had subject matter jurisdiction over the Foundation's § 1983 claim against Mauro in his official capacity for prospective injunctive relief. However, the defendants denied that the court had jurisdiction over the remaining claims. The defendants then filed a motion for summary judgment. Specifically, they asserted (1) that the Foundation's claims were barred by res judicata, collateral estoppel, and stare decisis in light of the Fifth Circuit's decision in *Humble Oil*; (2) that the State of Texas was entitled to judgment as a matter of law with respect to the Foundation's claim under Article I, Section 17 of the Texas Constitution because title to the disputed property rested with the State; (3) that the Foundation's action was barred by limitations and under the doctrine of laches; (4) that the Foundation's state law claims against Mauro were barred by the doctrine of sovereign immunity; and (5) that the Foundation's claim against Mauro was not a cognizable claim under § 1983 and barred by the Eleventh Amendment.

3

The Foundation then amended its complaint to assert additionally an inverse condemnation claim against the State of Texas under the Fifth Amendment to the United States Constitution. In response to this amended complaint, the defendants filed an amended answer in which they denied that the relief sought by the Foundation for its § 1983 claim was proper prospective relief. The defendants also pleaded the various affirmative defenses raised in their earlier motion for summary judgment, as well as "sovereign immunity and the Eleventh Amendment to the U.S. Constitution."

The Foundation subsequently filed its own motion for partial summary judgment, seeking a judgment declaring that the disputed land was not "submerged" land owned by the State but rather land which belonged to the Foundation as part of its upland property. The Foundation also requested a ruling that its claims were not barred by res judicata or collateral estoppel.

After a hearing on the parties' cross-motions for summary judgment, the district court dismissed the entire suit for lack of subject matter jurisdiction and denied the Foundation's motion for partial summary judgment. The district court reasoned that the Foundation's state law claim against Mauro was barred by the Eleventh Amendment, as interpreted in *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The district court also determined that Mauro's actions, which formed the basis of the Foundation's § 1983 claim, were discretionary actions of an elected official acting under a state statute not challenged as unconstitutional. Accordingly, the

4

district court concluded that the Eleventh Amendment barred the Foundation's § 1983 claim in federal court because the claim was an action against a state official for a violation of state law and the relief requested was against the State, not Mauro. The district court further determined that the Foundation's state and federal takings claims against the State of Texas were barred by the Eleventh Amendment—specifically, under the reasoning of *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

Several days later, the district court issued an order modifying this dismissal. The district court explained:

> ... [W]hen this Court issued its Order of Dismissal, it overlooked the removed status of this litigation. Rather than dismiss for lack of jurisdiction all of plaintiff's federal *and* state causes of action against defendants, Garry Mauro, Commissioner of the General Land Office, and the State of Texas, it is the better judgment and the intention of the court to dismiss only those claims of plaintiff that are barred by the Eleventh Amendment of the United States Constitution. These are plaintiff's claims asserted against Commissioner Mauro and the State of Texas pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments.
>
> All other claims the court remands to the 105th Judicial District Court, Kenedy County, Texas for its decision.

The district court thus dismissed both of the Foundation's federal claims, but remanded the state law claims to state court. The Foundation then filed a timely notice of appeal from the district court's order dismissing its federal claims and denying its motion for partial summary judgment.[1]

## II. STANDARD OF REVIEW

---

[1]The Foundation has specifically disclaimed any intent to challenge the district court's decision remanding its state law claims to state court.

Although this court has no jurisdiction to review a district court's judgment which remands a cause of action to state court for lack of subject matter jurisdiction, *see* 28 U.S.C. § 1447(d); *McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1201-03 (5th Cir.1991); *Mitchell v. Carlson,* 896 F.2d 128, 131 (5th Cir.1990), any aspect of that judgment which is distinct and separable from the remand proper may be reviewed on appeal, *see City of Waco v. United States Fidelity & Guar. Co.,* 293 U.S. 140, 142-43, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934); *Mitchell,* 896 F.2d at 132; *see also J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 271 (7th Cir.1990) (even if a district court has properly refused to exercise jurisdiction over pendent state law claims, the dismissal of federal claims giving rise to the removal is reviewable). Because the district court's dismissal of the Foundation's federal claims was separate and distinct from its remand of the Foundation's state law claims, this court has jurisdiction to review the dismissal of the Foundation's federal claims.

We review the district court's dismissal of federal claims for lack of subject matter jurisdiction *de novo. In re Bradley,* 989 F.2d 802, 804 (5th Cir.1993); *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir.1992); *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992). We will not affirm the dismissal " "unless it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim which would entitle [it] to relief.' " *Hobbs,* 968 F.2d at 475 (quoting *Benton,* 960 F.2d at 21).

III. DISCUSSION

The Foundation raises three arguments on appeal. First, it contends that the district court erroneously dismissed its § 1983 claim for declaratory and prospective injunctive relief against Mauro in his official capacity. Second, the Foundation argues that the district court's disposition of its Fifth Amendment claim against the State of Texas was erroneous. Although the Foundation seemingly concedes that the Eleventh Amendment bars its assertion of this claim in federal court, it contends that the district court nonetheless should have remanded the claim to state court. Third, the Foundation maintains that the district court erred in reaching its motion for partial summary judgment. We address each of the Foundation's claims in turn.

*A. Dismissal of the Foundation's § 1983 Claim against Mauro*

The Foundation asserts that the district court erred in dismissing its § 1983 claim against Mauro for lack of subject matter jurisdiction due to the Eleventh Amendment bar. The Foundation asserts that in requesting declaratory and prospective injunctive relief against Mauro—who, acting under color of state law, allegedly deprived the Foundation of its property without due process of law—its claim is not barred by the Eleventh Amendment.

In its amended complaint, the Foundation asserted:

> This is a suit against Garry Mauro in his official capacity as Commissioner of the General Land Office under 42 U.S.C. § 1983 and the Due Process clause of the Fourteenth Amendment to the United States Constitution and under state law, for declaratory and injunctive relief to determine boundary and title to certain real property.... Specifically, Defendant Mauro has been and is currently depriving the Foundation of its real property without due process of law, in

7

violation of the Fourteenth Amendment to the United States Constitution.

The Foundation further detailed its requested relief:

> The Foundation requests that this Court determine and declare that all of the Disputed Land is above the vertical elevation of mean higher high water of the Laguna Madre, that the eastern boundary of the disputed Land constitutes the eastern boundary of the Big Barreta and Little Barreta grants, and that the Foundation is the owner of the Disputed Land. Further, the Foundation requests that Defendant Mauro be permanently enjoined from exercising dominion and control over the Disputed Land and leasing any portion of the Disputed Land for oil and gas development or surface use, and be directed to amend all official "state lease tract" maps and other official maps and documents to depict the Disputed Land as privately-owned land and not as state-owned submerged land.

After evaluating the Foundation's claims against Mauro and the ultimate relief requested, the district court concluded that "the true nature of this action is a title dispute" between the Foundation and the State. We agree.

The Foundation emphasized in its complaint that its suit against Mauro was *to determine boundary and title to certain real property.* For relief, the Foundation clearly requested that the district court determine and declare that *the Foundation was the owner* of the disputed land. The Foundation also requested that Mauro be permanently enjoined from leasing any portion of it for mineral development or surface use and that Mauro be directed to amend all state lease tract maps and other official documents *to depict that the disputed land is "privately owned."*

We read this entreaty as one that the Foundation's claim to the disputed property be declared secured as against all the world and that Mauro, in his capacity as Land Commissioner, officially recognize this property as the Foundation's—in other words, that

8

the district court adjudicate title to the property. However, a federal court does not have the power to adjudicate the State's interest in property without the State's consent. *See Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 682, 700, 102 S.Ct. 3304, 3313, 3322, 73 L.Ed.2d 1057 (1982) (plurality opinion); *id.* at 703, 102 S.Ct. at 3324 (White, J., concurring, joined by Powell, Rehnquist, and O'Connor, JJ.); *see also Tindal v. Wesley,* 167 U.S. 204, 223, 17 S.Ct. 770, 777-78, 42 L.Ed. 137 (1897); *United States v. Lee,* 106 U.S. (16 Otto) 196, 222, 1 S.Ct. 240, 262, 27 L.Ed. 171 (1892) (explaining that the United States could not be made a defendant to a suit concerning its property without its consent under the doctrine of sovereign immunity). The State of Texas has not so consented.

We also recognize that a state official, such as Mauro, acting in his official capacity, is not a "person" under § 1983 unless the relief requested in a suit against him in this capacity is prospective relief. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 & n. 10, 109 S.Ct. 2304, 2312 & n. 10, 105 L.Ed.2d 45 (1989); *see Stem v. Ahearn,* 908 F.2d 1, 4 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *see also Howlett v. Rose,* 496 U.S. 356, 365-66, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332 (1990) ("*Will* establishes that the State and the arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit [under § 1983] in either federal or state court."). To provide the Foundation with the relief it requests would necessitate a determination by the

9

district court that the State does not have title to the disputed property, title which the State has claimed for the past century and which was effectively adjudicated in the State in *Humble Oil.* Accordingly, the relief the Foundation requests, although nominally against Mauro, is retroactive relief *against the State.* *See Toledo, Peoria & Western R.R. Co. v. State of Illinois, Dep't of Transp.,* 744 F.2d 1296, 1299 (7th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985) (holding that the relief "requested by the plaintiff ordering the state to release its interest in real property" is similar to the "retroactive" relief barred by the Eleventh Amendment under *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and not the "prospective" relief permitted by *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)); *see also Pennhurst,* 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11 (" "The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." ' " (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted)).

Based on the Foundation's specific request for relief in its complaint against Mauro in his official capacity, the district court had proper reason to dismiss the Foundation's § 1983 claim. *See Stem,* 908 F.2d at 4 (concluding that because under *Will* state officials sued in their official capacities for damages are not

10

"persons" under § 1983, the court lacked subject matter jurisdiction over the plaintiff's claim against the defendants in their capacities as Texas state employees).

The Foundation, however, argues that despite the way it phrased its request for relief, its § 1983 claim was not brought to adjudicate title to the disputed property but for right to possession of that property as against Mauro. We point out that this case was removed to federal court in February 1990. However, it was not until October 21, 1991—when the Foundation filed a post-submission brief on its § 1983 claim after a hearing on the parties' cross-motions for summary judgment—that the Foundation first suggested that the court should recognize that its § 1983 claim was for right to possession of the disputed property as against Mauro.[2] The Foundation asserts the same on appeal. The Foundation's argument is thus that a federal court has jurisdiction to hear its suit for declaratory and injunctive relief against the government official *in possession* of its property, i.e., Mauro, who has "invaded and occupied" property rightfully belonging to the Foundation.

We need not decide whether in some sense Mauro is actually "in

_____

[2]We recognize that in its reply to Mauro's response to the Foundation's partial motion for summary judgment, filed on August 30, 1991, the Foundation stated that it had asserted a valid § 1983 cause of action because "it was well established that a suit for injunctive relief to obtain possession of property wrongfully held by state officials is not barred by the Eleventh Amendment," citing *Treasure Salvors* and *Tindal* for that proposition. However, it was not until the Foundation filed its post-submission brief on October 21, 1991, that the Foundation actually asserted that its requested relief was for possession of the disputed property as against Mauro.

11

possession" of the disputed property as the Foundation contends because in order to grant the Foundation the right to possession of this property as against Mauro, the district court would have to determine that title rests in the Foundation and thus adjudicate the State's interest in the disputed property—property which the State has "owned" for the past century. As we have already made clear, a federal court is not empowered to adjudicate the State's interest in property without the State's consent. *See Treasure Salvors, Inc.,* 458 U.S. at 682, 700, 102 S.Ct. at 3313, 3322; *id.* at 703, 102 S.Ct. at 3324 (White, J., concurring, joined by Powell, Rehnquist, and O'Connor, JJ.).

We also note that the Foundation's reliance on the Supreme Court's decisions in *Lee, Tindal,* and *Treasure Salvors* is misplaced. First, the Foundation fails to recognize that *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), explicitly overruled *Tindal, see Pennhurst,* 465 U.S. at 110 n. 19, 104 S.Ct. at 913 n. 19, and significantly limited *Lee, see Larson,* 337 U.S. at 696-97, 69 S.Ct. at 1464-65; *see also Treasure Salvors,* 458 U.S. at 688-89, 102 S.Ct. at 3316-17.

Second, *Treasure Salvors* speaks directly against the Foundation's argument. In *Treasure Salvors,* the Court addressed the issue of whether the district court's arrest warrant in an admiralty *in rem* action, issued against two state officials who held artifacts from an abandoned vessel found off the Florida Keys, was barred by the Eleventh Amendment. A plurality of the Court

12

concluded that the warrant was not so barred. *Id.* at 699, 102 S.Ct. at 3322.

The plurality reached this conclusion by first explaining that the warrant had issued against state officials who were in possession of the artifacts and not the State of Florida itself. *Id.* at 691, 102 S.Ct. at 3318. The plurality next noted that although the officials claimed a state statute as authority to possess these artifacts, the statute permitted officials to hold artifacts which had been found on state-owned submerged land and the artifacts in question had been found in international waters. *Id.* at 695, 102 S.Ct. at 3320. Thus, the state officials were without a colorable claim to these artifacts. *Id.* at 696, 102 S.Ct. at 3320. Finally, the plurality explained that because the warrant sought possession of specific property and was not an *in personam* action brought to recover damages from the State, the warrant was permissible prospective relief. *Id.* at 699, 102 S.Ct. at 3322.

However, the plurality emphasized that the warrant itself merely secured possession of the artifacts and that its execution did not adjudicate the State's right to them. *Id.* at 697, 102 S.Ct. at 3321 (citing *Tindal,* 167 U.S. at 223, 17 S.Ct. at 777-78). The plurality also decided that although this court had properly determined that the Eleventh Amendment did not bar execution of the warrant to secure possession of the artifacts held by state officials, we had improperly adjudicated the State's right to those artifacts in making such a determination. *Id.* 458 U.S. at 700, 102

S.Ct. at 3322. The Court then concluded that a federal court did not have the power to adjudicate the State's interest in the artifacts without the State's consent. *See id.*

The instant case is distinguishable from *Treasure Salvors* in that the defendant officials in *Treasure Salvors* had no colorable claim under which they were authorized by the State to hold these artifacts. On the other hand, the State has "owned" the property at issue in the instant case for the past century, and title was effectively adjudicated in the State in *Humble Oil.* Moreover, the *Treasure Salvors* plurality determined that the warrant of arrest issued by the district court was permissible prospective relief because it sought only possession of the property from the defendant officials and was not an *in personam* action to recover damages against the State. The relief the Foundation requests in the instant case, even if it is "possession" as against Mauro, can only be granted if the district court orders the State to relinquish its interest in the disputed property. Such relief would be the equivalent of recovering damages from the State.

Despite its contention that its § 1983 suit is only for declaratory and prospective injunctive relief against Mauro in his official capacity, the relief sought by the Foundation—no matter how its request for relief is phrased—would operate against the State. Hence, the State of Texas, not Mauro, is the real, substantial party in interest. We therefore conclude that the Foundation's § 1983 claim is barred by the Eleventh Amendment, and the district court did not err in determining that the court did

14

not have the power to entertain the claim.

*B. Disposition of the Fifth Amendment and § 1983 Claims*

The Foundation also argues that the district court should have remanded its federal claims to state court. We disagree.

The district court properly concluded that it did not have subject matter jurisdiction over the Foundation's § 1983 claim. *See supra* Part III.A. The court also correctly determined that the Foundation's Fifth Amendment inverse condemnation claim brought directly against the State of Texas is also barred by the Eleventh Amendment. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057-58, 57 L.Ed.2d 1114 (1978) (reaffirming the rule set forth in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), that a citizen cannot sue a state in federal court, even if only prospective injunctive relief is being sought, without the state's consent).

The Foundation acknowledges on appeal that its state and federal claims were not "separate and independent" and that it had alleged only a "single underlying wrong" from these claims. It also recognizes that the Supreme Court's decision in *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 353-55 & n. 11, 108 S.Ct. 614, 620-22 & n. 11, 98 L.Ed.2d 720 (1988), makes it clear that the remand provision of 28 U.S.C. § 1441(c) does not apply in such a situation. Yet, the Foundation invites this court to determine that § 1441(c) *is* applicable in the instant case because "it makes no sense for a district court to possess discretion to remand all claims if the state and federal claims are " "separate

15

and independent,' " i.e., under § 1441(c), "but to have no such discretion if the claims are related."  The Foundation thus invites us to recognize a new remand authority available to the district court.  We decline the invitation and determine that the district court did not err by dismissing the Foundation's federal claims.[3]

### C. Denial of Summary Judgment

Finally, the Foundation contends that the district court erred in denying its motion for partial summary judgment *after* the court had concluded that it lacked subject matter jurisdiction.  We agree.

"Unless a federal court possesses subject matter jurisdiction over a dispute, ... any order it makes (other than an order of dismissal or remand) is void."  *Shirley v. Maxicare Texas, Inc.,* 921 F.2d 565, 568 (5th Cir.1991).  Hence, that portion of the district court's judgment denying the Foundation's motion for partial summary judgment should be vacated.

### IV. CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in dismissing the Foundation's § 1983 claim against Mauro and its Fifth Amendment claim against the State of Texas.  However, the district court erred in denying the Foundation's motion for partial summary judgment.  We therefore AFFIRM the district court's judgment of dismissal and VACATE that portion of

---

[3]We express no opinion on the applicability of 28 U.S.C. § 1447(c) to the instant case.  The Foundation has not argued or briefed this issue on appeal, *see* FED.R.APP.P. 28(a)(5), and in fact has asserted that "no statute expressly says that the Foundation's federal claims may be returned to state court."

the district court's judgment denying the Foundation's motion for partial summary judgment.  Costs shall be borne by the Foundation.