42 F.3d 1244
 COEUR D'ALENE TRIBE OF IDAHO, in its own right and as the
beneficially interested party subject to the trusteeship of
the United States of America; Ernest L. Stensgar; Lawrence
Aripa; Margaret Jose; Domnick Curley; Al Garrick; Norma
Peone; Henry Sijohn, individually, in their official
capacity and on behalf of all enrolled members of the Coeur
D'Alene Tribe of Idaho, Plaintiffs-Appellants,
v.
STATE OF IDAHO; Cecil D. Andrus, Governor; Pete Cenarrusa,
Secretary of State; Larry Echohawk, Attorney General; J.D.
Williams, Auditor; Jerry Evans, Superintendent of Public
Instruction; Keith Higginson, Director, Dep't of Water
Resources, each individually and in his official capacity;
Idaho State Board of Land Commissioners; Idaho State
Department of Water Resources, Defendants-Appellees.
 No. 92-36703.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1994.
Decided Dec. 9, 1994.
 
 Raymond C. Givens and Shannon D. Work, Givens & Funke, Coeur d'Alene, ID, for plaintiffs-appellants.
 Steven W. Strack, Deputy Atty. Gen., Boise, ID, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before: WRIGHT, REAVLEY,* and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 
 1
 An Indian tribe brought this action against a state, state agencies, and state officials for quiet title, injunctive relief, and declaratory relief. The district court dismissed all the claims on the grounds of Eleventh Amendment immunity and failure to state a claim. The Indian tribe appeals. We affirm in part, reverse in part, and remand.
 
 FACTS
 
 2
 The Coeur d'Alene Indian Tribe (the Tribe) brought this action in federal district court in Idaho naming the State of Idaho, several state agencies (the Agencies), and several state officials (the Officials) as defendants. The Tribe claims title to all of the submerged lands within the boundaries of its reservation that were established by Executive Order on November 8, 1873, and ratified by Congress in 1891, Chapter 543 Sec. 19, 26 Stat. 989, 1026-1029 (1891), including Lake Coeur d'Alene. The Tribe alternatively claims ownership of these lands pursuant to unextinguished aboriginal title. The Tribe's claim to these lands includes a claim to the water on the land. The Tribe brought this suit to quiet title to these lands and waters in its name, and for declaratory and injunctive relief to preclude regulation or interference with possession by the Agencies and Officials.
 
 
 3
 Defendants moved to dismiss the Tribe's complaint on Eleventh Amendment immunity grounds, and for failure to state a claim upon which relief could be granted. The district court dismissed the Tribe's entire claim. Coeur d'Alene Tribe of Idaho v. Idaho, 798 F.Supp. 1443 (D. Idaho 1992). The court concluded that the Eleventh Amendment barred the claims against Idaho and the Agencies. Id. at 1448. The district court also concluded that the claims against the Officials for quiet title and declaratory relief were barred by the Eleventh Amendment because these claims were the functional equivalents of a damage award against the State. Id. at 1448-49. Finally, the district court dismissed the claim for injunctive relief against the Officials, holding that as a matter of law, Idaho is in rightful possession of the land at issue. Id. at 1452.
 
 
 4
 We agree that the Eleventh Amendment bars all claims against the State and the Agencies, as well as the quiet title claim against the Officials, and affirm the district court's judgment on these claims. To the extent that the claims for injunctive and declaratory relief against the Officials seek only to preclude future violations of federal law, we conclude that these actions are not barred by the Eleventh Amendment, and reverse the district court's judgment on these claims. Because the Tribe has an arguable claim to ownership of the property at issue, we also reverse the district court's dismissal for failure to state a claim.
 
 DISCUSSION
 I. Idaho and State Agency Defendants
 
 5
 With limited exceptions, a state's sovereign immunity as recognized by the Eleventh Amendment of the United States Constitution bars suit against it in federal courts. The Eleventh Amendment provides:
 
 
 6
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 7
 Although the Eleventh Amendment by its terms bars only actions brought by citizens of sister states or foreign countries, the Supreme Court "has recognized that [the Eleventh Amendment's] greater significance lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984) (hereinafter Pennhurst ). "[T]he Eleventh Amendment ... stand[s] not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact [and] that the judicial authority in Article III is limited by this sovereignty...." Blatchford v. Native Village of Noatak, 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991) (citations omitted). A state's Eleventh Amendment immunity applies to suits in equity as well as in law, Missouri v. Fiske, 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933), and to state agencies as well as states, Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1982); Almond Hill Sch. v. United States Dep't of Agric., 768 F.2d 1030, 1034 (9th Cir.1985). This immunity can only be surrendered in the plan of convention, waived by the state, or abrogated by Congress. Almond Hill Sch., 768 F.2d at 1034-35. None of these limitations on Idaho's Eleventh Amendment immunity applies here.
 
 A. The Plan of Convention
 
 8
 The plan of convention implicitly surrenders the states' immunity to certain other sovereigns when the states enter the Union. See Blatchford, 501 U.S. at 780-82, 111 S.Ct. at 2582. The Supreme Court has recognized only two sovereigns to which every state has surrendered its immunity through the plan of convention: sister states, South Dakota v. North Carolina, 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904), and the United States, Blatchford, 501 U.S. at 780-82, 111 S.Ct. at 2582; United States v. Texas, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892).
 
 
 9
 In Blatchford, the Court held that the plan of convention does not surrender the states' immunity to Indian tribes in an action for damages. 501 U.S. at 782-84, 111 S.Ct. at 2583. The Court had previously held that because Indian tribes were not parties to the constitutional convention, the tribes could not have consented to suit in the convention. Id. at 782-84, 111 S.Ct. at 2583 (citing Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991)). Because "[w]hat makes the States' surrender of immunity from suit by sister States plausible is the mutuality of that concession," id. at 782, 111 S.Ct. at 2582, the Court reasoned that the lack of mutuality of any waiver of immunity to suit by tribes necessarily led to the conclusion that the states also had not accepted such a waiver in the plan of convention. Id. at 782-84, 111 S.Ct. at 2583.
 
 
 10
 Although Blatchford involved only an action for damages, its reasoning applies equally to actions for injunctive relief, because Indian tribes are also immune from actions by states for injunctive relief. Rehner v. Rice, 678 F.2d 1340, 1351 (9th Cir.1982), rev'd on other grounds, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983); California v. Quechan Tribe of Indians, 595 F.2d 1153 (9th Cir.1979). It is well-established that a state's Eleventh Amendment immunity bars suits against the state and state agencies for equitable relief as well as for damages. Pennhurst, 465 U.S. at 100, 104 S.Ct. at 907. If the states did not surrender their immunity from suit by tribes for damages through the plan of convention, we fail to see how they could have surrendered their immunity from suit for injunctive or declaratory relief.[1]
 
 B. Consent to Suit
 
 11
 A state may waive its privilege of immunity from suit. Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). To waive its Eleventh Amendment immunity, a state must unequivocally express its consent to be sued. Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907. The Tribe claims that Idaho has waived its immunity in three ways.
 
 
 12
 First, the Tribe argues that Idaho courts have waived the state's immunity by ruling that actions against the state to quiet title are not claims against the sovereign.[2] Lyon v. State, 76 Idaho 374, 283 P.2d 1105, 1106 (1955); Roddy v. State, 65 Idaho 137, 139 P.2d 1005, 1010 (1943). In Lyon, the Idaho Supreme Court rejected the state's motion to dismiss due to common law sovereign immunity because "[t]he appellants by the proceeding [to quiet title] are asserting no claim against the sovereignty, but are attempting to retain what they allegedly own." Lyon, 283 P.2d at 1106. The Tribe concludes that Idaho and the Agencies have no Eleventh Amendment immunity in a proceeding to quiet title such as this one.
 
 
 13
 We disagree. A state's immunity from suit in state court as determined by a state court is not necessarily coextensive with Eleventh Amendment immunity from suit in federal court. See Edelman v. Jordan, 415 U.S. 651, 677 n. 19, 94 S.Ct. 1347, 1363 n. 19, 39 L.Ed.2d 662 (1974) ("Whether [the state] permits such a suit to be brought against the State in its own courts is not determinative of whether [it] has relinquished its Eleventh Amendment immunity from suit in the federal courts."); Aquilar v. Kleppe, 424 F.Supp. 433, 436 (D. Alaska 1976) ("prohibition placed on the power of the federal judiciary by the eleventh amendment exceeds the common law doctrine of sovereign immunity"). We will not infer a waiver of Eleventh Amendment immunity based on a state court holding that no sovereign immunity bars its own jurisdiction.
 
 
 14
 Second, the Tribe argues that Idaho waived its Eleventh Amendment immunity by adopting the Idaho Constitution, which disclaims any interest in Indian lands within the state. The Idaho Constitution provides:
 
 
 15
 And the people of the state of Idaho do agree and declare that we forever disclaim all right and title ... to all lands lying within [the state of Idaho] owned or held by any Indians or Indian tribes; and until the title thereto shall have been extinguished by the United States, the same shall be subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States....
 
 
 16
 Idaho Const. art. 21, Sec. 19. We have held that virtually identical language in other state constitutions does not constitute a waiver of Eleventh Amendment immunity from suit by Indians or Indian tribes. See Harrison v. Hickel, 6 F.3d 1347, 1354 (9th Cir.1993) (Alaska Statehood Act disclaiming "all right and title ... to any lands ... the right or title to which may be held by any" native, not sufficient to waive Alaska's Eleventh Amendment immunity to suit by Indian claimants to quiet title to disputed land (quoting Alaska Statehood Act, Sec. 4, Pub.L. No. 85-508, 72 Stat. 339 (1958))); Skokomish Indian Tribe v. France, 269 F.2d 555, 562 (9th Cir.1959) (Washington State Constitution disclaiming forever any right and title to "all lands lying within [the state] owned or held by any Indian or Indian Tribes" not sufficient to waive Washington's Eleventh Amendment immunity to suit by Indian tribe to quiet title to disputed land (quoting Wash. Const. art. XXVI, Sec. 2)). We likewise conclude that Idaho did not waive its immunity from suit by Indian tribes in its constitution.
 
 
 17
 Finally, the Tribe argues that Idaho waived its immunity from Indian land claims by agreeing in its constitution that Congress has absolute jurisdiction and control over Indian lands. Idaho Const. Art. 21, Sec. 19. It further argues that Congress exercised that control by granting tribes the right to sue the state in federal court pursuant to 28 U.S.C. Sec. 1362.[3]
 
 
 18
 We conclude that this argument is foreclosed by the Supreme Court's holding in Blatchford. In that case, the Court rejected the argument that Congress had delegated to the tribes the federal government's exemption from state sovereign immunity by enacting 28 U.S.C. Sec. 1362. 501 U.S. at 784-86, 111 S.Ct. at 2584. We fail to see a significant difference in the Tribe's argument here. If Idaho waived its immunity from suit through its constitution by recognizing that Congress alone has jurisdiction over Indian lands, the waiver was in favor of the United States only. We can find no reason to read more into section 1362 on behalf of tribes suing Idaho than the Supreme Court did on behalf of native villages suing Alaska. We thus affirm the district court's dismissal of the action against Idaho and the Agencies.
 
 II. Defendant State Officials
 
 19
 Generally, state officials in their official capacities are considered to be acting on behalf of the state, and the Eleventh Amendment therefore shields them from suit. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05, 87 L.Ed.2d 114 (1985); Pennhurst, 465 U.S. at 101-02, 104 S.Ct. at 908-09. The courts have, however, fashioned narrow exceptions to this rule. A plurality of the Supreme Court provided the following test to determine whether a suit against state officials is barred by the Eleventh Amendment:
 
 
 20
 (a) Is this action asserted against officials of the State or is it an action brought directly against the State ... itself? (b) Does the challenged conduct of state officials constitute an ultra vires or unconstitutional withholding of property or merely a tortious interference with property rights? (c) Is the relief sought by [plaintiffs] permissible prospective relief or is it analogous to a retroactive award that requires "the payment of funds from the state treasury?"
 
 
 21
 Treasure Salvors, 458 U.S. at 690, 102 S.Ct. at 3317 (quoting Quern v. Jordan, 440 U.S. 332, 346-47, 99 S.Ct. 1139, 1147-48, 59 L.Ed.2d 358 (1979)).[4] The Tribe must prevail on each part of this three-part test or the Eleventh Amendment bars the action against the Officials.
 
 A. Real Party in Interest
 
 22
 When, as here, public officials are the nominal defendants, "a question arises as to whether [the] suit is a suit against the State itself." Pennhurst, 465 U.S. at 101, 104 S.Ct. at 908.
 
 
 23
 "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."
 
 
 24
 Id. at 101 n. 11, 104 S.Ct. at 908 n. 11 (quoting Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (internal quotations omitted)).
 
 
 25
 While this would appear to preclude relief in this case, the courts have established an important exception to this general rule. An action claiming that state officials are violating federal law is deemed not to be an action against the state, and thus is not barred by the state's immunity. See Pennhurst, 465 U.S. at 102, 104 S.Ct. at 909 ("a suit challenging the constitutionality of a state official's action is not one against the State"); Almond Hill Sch., 768 F.2d at 1034 (exception applies to alleged violations of federal statutes).
 
 
 26
 Under our federalist system, the states are considered unable to act in a manner contrary to federal law. Thus any action on the part of state officials that violates federal law cannot be attributed to the state. Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908). Because federal law preempts state law, if the property at issue in this case belongs to the Tribe pursuant to federal law, the Officials must conform their actions to that federal law in spite of state statutes that purport to regulate the property as belonging to the state. If the Officials do not act in accordance with federal law, the state's claim of ownership cannot clothe the Officials in Eleventh Amendment immunity from suit.
 
 
 27
 This case fits within the exception. The Tribe alleges that it holds the property at issue pursuant to an executive order that was ratified as a federal statute. See Chapter 543 Sec. 19, 26 Stat. 989, 1026-1029 (1891). Because the Tribe has alleged that the actions of the Officials in exercising control over the property at issue violate this federal law, the Officials must be considered the real parties in interest in the claims against them.
 
 
 28
 B. Violation of Federal Law vs. Tortious Conduct
 
 
 29
 Under the second prong of the test, we ask whether the challenged conduct either violates federal law, or is wholly unauthorized by state law. If state officials act within the authority of state law and violate no federal rights, their interference with a plaintiff's legal rights is merely tortious, and is protected by the Eleventh Amendment. Treasure Salvors, 458 U.S. at 692-97, 102 S.Ct. at 3318-21; Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 692, 69 S.Ct. 1457, 1462, 93 L.Ed. 1628 (1949).
 
 
 30
 The Supreme Court has recognized that the determination of whether a plaintiff's federal rights are being violated may ultimately depend on the decision that the court reaches on the merits of the claim. Larson, 337 U.S. at 690, 69 S.Ct. at 1461. Thus, a plaintiff need only adequately allege an ongoing violation of a federal right to meet this prong of the test. Cf. id. at 690 n. 10, 69 S.Ct. at 1461 n. 10 (dismissal for lack of jurisdiction is proper if claim of violation of federal law is clearly frivolous or insubstantial); Tindal v. Wesley, 167 U.S. 204, 216, 17 S.Ct. 770, 775, 42 L.Ed. 137 (1897) ("It is to be presumed in favor of the jurisdiction of the court that the plaintiff may be able to prove the right which he asserts in his declaration"). The possibility that a defendant will ultimately prevail on the merits does not clothe that defendant in Eleventh Amendment immunity.[5] See Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The Tribe adequately alleges an ongoing violation of a federal right and, thus, meets this prong of the test.
 
 C. Remedy Sought
 
 31
 The third and final prong of the test is whether the relief sought is permissible prospective relief, or is instead comparable to damages. "The eleventh amendment bars ... suits against ... state officials in their official capacity when the relief sought is retrospective in nature, i.e. damages." Ulaleo v. Paty, 902 F.2d 1395, 1398 (9th Cir.1990). Although it has often been stated that the Eleventh Amendment forbids relief that would require the payment of funds from the state treasury, the overriding question is whether the relief sought would remedy future rather than past wrongs. An injunction that will in practical effect require payment of funds out of the state treasury is nonetheless permissible if it requires only that officials conform their future actions to federal law. Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).
 
 
 32
 The Supreme Court has long held that an action against state officials to enjoin an ongoing violation of federal law is not precluded by virtue of the fact that the determination of the controversy necessarily involves a question of the state ownership of property. Treasure Salvors, 458 U.S. at 685-87, 102 S.Ct. at 3314-15; Tindal, 167 U.S. at 213-22, 17 S.Ct. at 774-77; Ex parte Tyler, 149 U.S. 164, 190, 13 S.Ct. 785, 792, 37 L.Ed. 689 (1893).[6] As the Court stated in Tindal:
 
 
 33
 The settled doctrine of this court wholly precludes the idea that a suit against individuals to recover possession of real property is a suit against the state simply because the defendant holding possession happens to be an officer of the state and asserts that he is lawfully in possession on its behalf.
 
 Tindal, 167 U.S. at 221, 17 S.Ct. at 777.[7]
 
 34
 The Supreme Court's latest opinion involving property claimed by a state is Treasure Salvors. While the circuit courts have reached varying conclusions based upon that case, we think that it established two clear rules that are relevant to the case before us. First, federal courts may not hear actions to quiet title to property in which the state claims an interest, without the state's consent. See id.
 
 
 35
 Second, declaratory and injunctive relief against state officials to foreclose future violations of federal law is available even if that relief works to put the plaintiff in possession of property also claimed by the state. See id. While the conflict between these two rules presents a conceptual difficulty that perhaps cannot be resolved logically, we are nevertheless bound by both. See Manypenny v. United States, 948 F.2d 1057, 1069 n. 4 (8th Cir.1991) (Gibson, J., concurring and dissenting).
 
 
 36
 The Officials rely on several circuit and district court cases that have held that declaratory and injunctive relief that necessarily involves the adjudication of a state's interest in real property is comparable to damages, and therefore precluded in the absence of the state's consent. See Mauro, 21 F.3d 667, 673 (5th Cir.1994); Fitzgerald v. Unidentified Wrecked and Abandoned Vessel, 866 F.2d 16, 18 (1st Cir.1989); Toledo, Peoria & Western R.R. v. Illinois Dep't of Transp., 744 F.2d 1296, 1299 n. 1 (7th Cir.1984) cert. denied, 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985); Aquilar v. Kleppe, 424 F.Supp. 433, 437 (D. Alaska 1976). A case recently decided by this court appears to support this conclusion. See Harrison v. Hickel, 6 F.3d 1347, 1348 (9th Cir.1993).
 
 
 37
 Some of these cases are distinguishable. Toledo, Peoria & Western held only that "[t]he eleventh amendment bars a federal action against state officials based on state law when the relief sought directly impacts the state." 744 F.2d at 1299 (emphasis added). The plaintiff's claims of violations of federal rights in that case were defeated by the availability of a remedy in the Illinois Court of Claims,[8] which left only state law claims. Any support found in that case for the proposition that a federal claim against state officials for possession of property is precluded if it is "an action nominally against the [state] officials but in fact against the state," id., is thus dicta.
 
 
 38
 We read the Ninth Circuit and District of Alaska cases to mean only that an action that would conclusively adjudicate the state's title to property cannot be brought without the state's consent. See Harrison, 6 F.3d at 1348 (affirming dismissal of claims against individual defendants "because the quiet title relief sought ... directly affects the interests of the State"); Aquilar, 424 F.Supp. at 437 (plaintiffs sought to have the court "declare certain portions of the patents void ab initio"). While these cases could admittedly be read to support a holding that injunctive relief against a state official is barred if the official holds the disputed property based on the state's claim of ownership, such a reading is foreclosed by Supreme Court precedent.
 
 
 39
 The First Circuit case Fitzgerald and the Fifth Circuit case Mauro are more difficult to reconcile. We note that like Toledo, Peoria & Western, Fitzgerald did not involve a claim of violations of federal law. However, the case appears to hold that when an action includes the state and state agencies as defendants, and seeks an adjudication of the state's interest in property, that portion of the action that is against state officials for injunctive and declaratory relief is also directed against the state itself, and is therefore barred. Fitzgerald, 866 F.2d at 18.
 
 
 40
 In Mauro, the plaintiff alleged that the defendant state official was depriving the plaintiff of its property without due process of law. 21 F.3d at 672. The plaintiff sought injunctive relief forbidding the leasing of the property for mineral development, as well as a declaration of title. The Fifth Circuit held that all of the relief sought was barred by the Eleventh Amendment because "a federal court does not have the power to adjudicate the State's interest in property without the State's consent." Id. The court refused to hear the claims for declaratory and injunctive relief against the state official because it believed that to do so it would have to adjudicate the state's interest in the property.
 
 
 41
 Although the Fifth Circuit attempted to distinguish Treasure Salvors, id., 458 U.S. at 673, 102 S.Ct. at 3308, we do not find its reasoning persuasive. As in Mauro and Fitzgerald, the plaintiffs in Treasure Salvors asked that they be declared the owners of property as against the state. The Supreme Court held that while this relief was barred by the Eleventh Amendment, the ancillary claims for declaratory and injunctive relief against state officials could go forward. 458 U.S. at 684, 102 S.Ct. at 3314.
 
 
 42
 On an initial reading, the logic underlying Fitzgerald and Mauro seems compelling. Starting from the indisputable proposition that a federal court may not adjudicate the state's interest in property without the state's consent, Treasure Salvors, 458 U.S. at 682, 102 S.Ct. at 3313, the outcome of these cases (that the state officials are also protected by the Eleventh Amendment) appears inevitable. On the other hand, reasoning from the equally indisputable proposition that a "federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury," Quern, 440 U.S. at 337, 99 S.Ct. at 1143, leads to the ultimate conclusion that a quiet title action should be permissible. Thus while both propositions are valid, their ultimate logical conclusions are faulty. The Supreme Court has charted a middle ground between the necessarily conflicting doctrines of state sovereign immunity and the supremacy of federal law. It should come as no surprise that that middle ground does not wholly conform to either doctrine.
 
 
 43
 Following Ex parte Young, we have had little difficulty concluding that an injunction against a state official forbidding the enforcement of a state law is not an injunction against the state if the state law conflicts with federal law. See, e.g., Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir.1992); Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 552 (9th Cir.1991).[9] At the time of Ex parte Young, the conceptual difficulty was with actions that restrained the state from acting through its officials to enforce state laws, rather than with actions that implicated the state's ownership of property. The Supreme Court's reply to this difficulty is equally valid today, although it would perhaps be better stated inversely:
 
 
 44
 The difference between an actual and direct interference with tangible property and the enjoining of state officers from enforcing an unconstitutional act, is not of a radical nature, and does not extend, in truth, the jurisdiction of the courts over the subject matter. In the case of the interference with property the person enjoined is assuming to act in his capacity as an official of the State, and justification for his interference is claimed by reason of his position as a state official. Such official cannot so justify when acting under an unconstitutional enactment of the legislature. So, where the state official, instead of directly interfering with tangible property, is about to commence suits, which have for their object the enforcement of an act which violates the Federal Constitution ... he is seeking the same justification from the authority of the State as in other cases. The sovereignty of the State is, in reality, no more involved in one case than in the other. The State cannot in either case impart to the official immunity from responsibility to the supreme authority of the United States.
 
 
 45
 209 U.S. at 167, 28 S.Ct. at 457.
 
 
 46
 Cases involving property claimed by the state do, however, present an additional difficulty in that the fiction that an action in violation of federal law cannot be an action of the state breaks down when confronted by the state's claim of title to property. Whatever else a state can or cannot do, it apparently can claim title to property in derogation of federal law. In such an instance, the state is protected from suit by the Eleventh Amendment. However, this creates no exception to the rule that when federal law conflicts with the state's claim, state officials must act in conformance with federal law, and can be compelled to do so by the federal courts. To resolve this conundrum, courts have allowed all relief other than relief that would foreclose the State's claim in future judicial proceedings. See Treasure Salvors, 458 U.S. at 699-700, 102 S.Ct. at 3322; Tindal, 167 U.S. at 223, 17 S.Ct. at 777; Zych v. Wrecked Vessel Believed to be the Lady Elgin, 960 F.2d 665, 670 (7th Cir.) cert. denied, --- U.S. ----, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992); Florida Dep't of State v. Treasure Salvors, 689 F.2d 1254, 1256 (5th Cir.1982) (per curiam, quorum opinion) (hereinafter Treasure Salvors II ).
 
 
 47
 We thus affirm the district court's dismissal of the quiet title claim. However, because the injunctive and declaratory relief sought by the Tribe would not compensate for past violations of federal law, but would instead preclude future violations, we conclude that this portion of the action is not barred by the state's immunity. The Tribe is not seeking to have any past violations of its federal rights redressed in any way. It is not seeking damages or restitution for past wrongs, compare Edelman, 415 U.S. at 668-69, 94 S.Ct. at 1358, nor is it seeking to rescind a past transfer of property, compare Ulaleo, 902 F.2d at 1399-1400. Rather, it seeks a determination under federal law of the Tribe's right to possess, use, and control the beds, banks, and waters of navigable waterways within the Coeur d'Alene Reservation in the future. Thus to the extent that the declaratory and injunctive relief binds state officials in accordance with what the district court finds to be the Tribe's right to the property, it is allowable. Because the state is unable to act in violation of federal law, declaratory relief that determines what federal law is and requires state officials to act accordingly cannot be considered relief against the state. We follow the Fifth Circuit's disposition of Treasure Salvors after remand from the Supreme Court, and conclude that if the district court finds that the property at issue belongs to the Tribe pursuant to federal law, it may decree the Tribe to be the owner of the property against all claimants except the State of Idaho and its agencies. See Treasure Salvors II, 689 F.2d at 1256; Zych, 960 F.2d at 670.
 
 
 48
 We recognize that if the Tribe ultimately prevails on the merits of this case, neither Idaho nor the Tribe will hold unclouded title to the property. The plaintiffs in Treasure Salvors apparently complained of just such a problem subsequent to the Supreme Court's disposition of that case. See Treasure Salvors II, 689 F.2d at 1256. Our conclusion undoubtedly will not satisfy any of the parties involved. However, just as we may not exercise jurisdiction over the state to more fully resolve this controversy, we may not decline jurisdiction to the extent that it exists. See Ex parte Young, 209 U.S. at 143, 28 S.Ct. at 447. We will not refuse to enforce the federal rights of Indian tribes against action by state officials merely because we cannot afford them complete relief.
 
 III. Section 1983
 
 49
 None of the claims discussed above differ when analyzed under 42 U.S.C. Sec. 1983. To the extent that Eleventh Amendment immunity bars the Tribe's claims, section 1983 does not help them. See Edelman, 415 U.S. at 677, 94 S.Ct. at 1362. To the extent that the suit is for prospective injunctive relief and is not barred by the Eleventh Amendment, a state official may be sued in his or her official capacity under section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989).
 
 
 50
 The Tribe argues that the individual plaintiffs have permissible section 1983 claims against the officials acting in their individual capacities. We agree. Injunctive relief is available against state officials in their individual capacities under section 1983. Hale v. Arizona, 967 F.2d 1356, 1369 (1992), rev'd on other grounds, 993 F.2d 1387 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993). Although the plaintiffs do not appear to be seeking any additional relief against the defendant officials as individuals, the action against them is proper in either capacity. Of course, they may have defenses available to them as individuals that are not available to them as officials. See Kentucky v. Graham, 473 U.S. at 166-67, 105 S.Ct. at 3105.
 
 IV. Dismissal for Failure to State a Claim
 
 51
 The district court held that the Tribe failed to state a claim on which relief could be granted. 798 F.Supp. at 1446. In its complaint, the Tribe alleges that it holds title to the submerged land pursuant to an Executive Order executed prior to the time that Idaho attained statehood. Such title, if proven, would defeat the officials' claim that they have authority to hold and regulate the property pursuant to the State's ownership. Puyallup Indian Tribe v. Port of Tacoma, 717 F.2d 1251, 1257-59 (9th Cir.1983).
 
 
 52
 When a state enters the union it takes title to all submerged land beneath navigable waters unless the United States has conveyed that land prior to statehood. Montana v. United States, 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981). Although there is a strong presumption against conveyance, that presumption is rebuttable. Id. at 552, 101 S.Ct. at 1251.
 
 
 53
 In Montana v. United States, the Supreme Court considered a tribe's claim of title to the bed of a navigable river as it flowed through the tribe's reservation. 450 U.S. at 550-57, 101 S.Ct. at 1250-54. The Court's analysis of this issue starts from the premise that "[a] court deciding a question of title to the bed of a navigable water must ... begin with a strong presumption against conveyance by the United States, ... and must not infer such a conveyance 'unless the intention was definitely declared or otherwise made very plain.' " (citations omitted)
 
 
 54
 Puyallup, 717 F.2d at 1257 (citing Montana, 450 U.S. at 552, 101 S.Ct. at 1251).
 
 
 55
 To make this showing, the Tribe may rely on evidence beyond the federal enactment that established the reservation. Choctaw Nation v. Oklahoma, 397 U.S. 620, 631-35, 90 S.Ct. 1328, 1334-36, 25 L.Ed.2d 615 (1970) (considering meaning parties likely gave to treaty language); Montana, 450 U.S. at 556, 101 S.Ct. at 1253 (considering evidence of Tribe's life-style at time of reservation); United States v. Aam, 887 F.2d 190, 195 (9th Cir.1989) ("inquiry focus[es] on the circumstances surrounding the creation of the reservation").
 
 
 56
 The State argues that as a matter of law the Executive Order of 1873 by its terms could not have transferred the submerged lands to the Tribe. This argument, however, fails for a variety of reasons.
 
 
 57
 The State first analogizes the language of the 1873 Executive Order ("withdrawn from sale and set apart as a reservation") to the language in Utah Div. of State Lands v. United States, 482 U.S. 193, 107 S.Ct. 2318, 96 L.Ed.2d 162 (1987), ("reserved from sale as the property of the United States") which the Supreme Court found insufficient to create a "reservation" of interest in submerged land. 482 U.S. at 203, 107 S.Ct. at 2324. Based on this analogy, the State concludes that the federal government cannot "reserve" submerged lands in a manner sufficient to withstand the "equal footing doctrine".
 
 
 58
 The "reservation" at issue here, however, is legally different from the "reservation" before the Supreme Court in Utah Div. of State Lands. In that case the issue was whether the federal government, by a general land law, could reserve for itself interests in submerged lands that would not be transferred upon admission to the state under "equal footing." In its 1987 opinion, the Supreme Court stated explicitly that it had never before decided whether the federal government's "reservation" of submerged lands could prevent title from passing to a state upon admission to the Union under the "equal footing" doctrine. 482 U.S. at 200-01, 107 S.Ct. at 2322-23. Yet, in Montana, decided six years earlier, the Supreme Court had already dealt with an Indian reservation created by language very similar to that at issue in the present appeal,[10] and explicitly treated the interest possessed by Indians in a "reservation" as a "grant" or "conveyance." 450 U.S. at 554, 101 S.Ct. at 1252-53. Given this prior holding, it is clear that the meaning of "reservation" in Utah Div. of State Lands is to be distinguished from the meaning of "reservation" when applied to the creation of Indian title. Thus, Utah Div. of State Lands is not applicable to the present case.
 
 
 59
 The State also argues that the President could not convey submerged lands by an executive order without express congressional authorization and that no implied authorization could justify such a conveyance. The State argues, without citing to any authority, that executive orders creating an interest in bedlands must be issued with explicit prior congressional approval or subsequent ratification. Since there was no ratification of the 1873 Executive Order creating the Coeur d'Alene reservation prior to Idaho's admission to statehood, the State argues that title to the bedlands passed to it under the equal footing doctrine. In support of this argument, the State notes that other court decisions finding an executive order conveyance of bedlands to Indians have all been supported by explicit congressional authorization.
 
 
 60
 This, however, does not appear to be the case. The State, for example, relies on Puyallup, 717 F.2d at 1251, to support its contention. It argues that although we found that the executive order conveyed title to a riverbed, the district court had found that the executive order had been issued pursuant to Article II of the Treaty of Medicine Creek, 10 Stat. 1132 (1854). Puyallup Tribe of Indians v. Port of Tacoma, 525 F.Supp. 65, 72 (W.D.Wash 1981). In fact, the treaty makes no reference whatsoever to conveyance of riverbeds nor does it provide any authorization for the President to convey such lands. If the State's contention were true, we would have denied the Tribe's claim of the riverbed due to lack of explicit congressional authorization to convey riverbeds.
 
 
 61
 We can find no decision which mentions the rationale offered by the state as a possible ground for denying a tribal claim. Two of our fairly recent cases denied tribal claims for riverbeds in relation to reservations created in part by executive order.[11] Nowhere in our opinions did we consider the possibility that such a claim might be defeated by a lack of explicit congressional authorization of the executive order.
 
 
 62
 As it is conceivable that the Tribe could prove facts that would entitle it to the relief sought, dismissal for failure to state a claim was error.
 
 
 63
 Additionally, the Coeur d'Alene tribe states a claim in Count One of their complaint for a declaratory judgment concerning aboriginal title to the beds and banks of all navigable waters within the 1873 Reservation which they allege has never been ceded or extinguished. The district court without discussion improperly dismissed this claim under Rule 12(b)(6). On remand the district court should resolve the issue of whether the Tribe is entitled to declaratory relief.
 
 
 64
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party shall bear their own costs.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 Native Village of Venetie I.R.A. Council v. Alaska, 944 F.2d 548 (9th Cir.1991), does not hold otherwise. Despite the language in that case, which in many places is directed against the State of Alaska, we specifically held only that "the eleventh amendment does not bar the plaintiffs' request for injunctive [and declaratory] relief against the Commissioner of the Department of Health and Social Services." Id. at 552 (emphasis added)
 
 
 [2]
 Stated another way, the Tribe argues not that the state waived its immunity, but rather that the state had no immunity to waive. Restating the argument does not alter the result, however. The Tribe names the state and the Agencies as defendants, and is clearly attempting to sue them in federal court. As the state's Eleventh Amendment immunity is immunity from suit of any kind, the state court's characterization of a particular action cannot overcome this bar
 
 
 [3]
 28 U.S.C. Sec. 1362 provides:
 The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.
 
 
 [4]
 Although Treasure Salvors was an in rem admiralty action, the Court noted "the question presented for our decision would not be any different if the State merely resisted an attachment of property located within the district." Id., 458 U.S. at 683, 102 S.Ct. at 3313. The test therefore applies to this action
 
 
 [5]
 We have previously held that where the plaintiff does not allege a violation of federal law, but rather alleges that the defendant lacked authority for his or her actions pursuant to state law, the Eleventh Amendment will bar the action unless the defendant had no colorable state authority for his or her actions. See Marx v. Government of Guam, 866 F.2d 294, 299-300 (9th Cir.1989) (citing Treasure Salvors, 458 U.S. at 682, 102 S.Ct. at 3313). We do not take either Treasure Salvors or Marx to mean that a state official is immune from an action seeking to enjoin him or her from violating federal law if the official's interpretation of federal law is colorable. Such a holding would constitute a marked departure from previous Eleventh Amendment jurisprudence
 
 
 [6]
 The same principle allows injunctive relief against federal officials without the consent of the United States for the wrongful interference with property. Dugan v. Rank, 372 U.S. 609, 621-22, 83 S.Ct. 999, 1006-07, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 647-48, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1962); Philadelphia Co. v. Stimson, 223 U.S. 605, 619-21, 32 S.Ct. 340, 344-45, 56 L.Ed. 570 (1912); United States v. Lee, 106 U.S. 196, 210-11, 1 S.Ct. 240, 252-53, 27 L.Ed. 171 (1882). Although cases against federal officials are no longer necessary because the United States has waived its sovereign immunity to actions to quiet title, 28 U.S.C. Sec. 2409a, the underlying principle remains valid. See Block v. North Dakota, 461 U.S. 273, 281-82, 103 S.Ct. 1811, 1816-17, 75 L.Ed.2d 840 (1983)
 
 
 [7]
 The Fifth Circuit has held that the Supreme Court overruled Tindal in Larson, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, and that this line of cases therefore provides no support for the proposition that an action for an injunction against a state official to deliver possession of property is not barred by the Eleventh Amendment. John G. and Marie Stella Kenedy Memorial Foundation v. Mauro, 21 F.3d 667, 673 (5th Cir.1994) (citing Pennhurst, 465 U.S. at 110 n. 19, 104 S.Ct. at 913 n. 19). We respectfully disagree. Pennhurst concludes that to the extent that Tindal was a tort case, it was overruled by Larson. However, to the extent that Tindal alleged a violation of a federal right, it clearly remains valid. See Treasure Salvors, 458 U.S. at 685-89 (Stevens, J., plurality opinion), 706, 102 S.Ct. at 3314-17, 3325 (White, J., concurring and dissenting)
 
 
 [8]
 Actions that involve federal claims of takings without just compensation or due process can be defeated by a showing that the state provides a post-deprivation remedy. Larson, 337 U.S. at 697 n. 18, 69 S.Ct. at 1465 n. 18. In contrast, states cannot provide a remedy for the taking of Indian lands that are held pursuant to federal law. See 25 U.S.C. Sec. 177
 
 
 [9]
 Ironically, Ex parte Young, which is generally credited for establishing this exception, followed what was already a well-established rule that a state official who claimed to hold property on behalf of the State could be sued in federal court without the State's permission and required to deliver possession of the property to its rightful owner. See Ex parte Young, 209 U.S. at 167, 28 S.Ct. at 457 (citing, In re Ayers, 123 U.S. 443, 507, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887)); Osborn v. United States Bank, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824)
 
 
 [10]
 Article II of the 1868 Treaty with the Crow Indians, at issue in Montana, provides in part: "The United States agrees that the following district of country [is] ... set apart for the absolute and undisturbed use and occupation of the Indians herein named ...". 15 Stat. 650 (1869). The present appeal involving the Executive Order of 1873 used the terms, "withdrawn from sale and set apart." Variation on such language is typical of Indian agreements creating reservations. See F. Cohen, Handbook of Federal Indian Law, 477 (1982)
 
 
 [11]
 United States v. Aam, 887 F.2d 190 (9th Cir.1989); United States v. Aranson, 696 F.2d 654 (9th Cir.1983)