6 F.3d 1347
 David B. HARRISON; Penny L. Harrison; Timothy E. Harrison;
Gary D. Harrison; Bruce A. Harrison; Donald R. Harrison;
Estate of Louis R. Harrison, Jr.; Heirs of Louis R.
Harrison and Owners of Native Allotment No. 053702,
Plaintiffs-Appellants,
v.
Walter J. HICKEL, Governor; State of Alaska; John Glass,
Lt.; Dan Lowden, Sgt.; Nova RiverRunners, Inc.; Randall
Hobbs; Hobbs Industries; Matanuska Electric Association,
and Matanuska Telephone Association, Defendants-Appellees.
 No. 92-35477.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1993.
Decided Sept. 23, 1993.
 
 J. Michael Robbins, Anchorage, AK, for plaintiffs-appellants.
 Robert Nauheim and John T. Baker, Asst. Attys. Gen., and Jerald M. Reichlin, (appearance only), Anchorage, AK, for defendant-appellee.
 Richard A. Weinig, Pletcher, Weinig, Moser & Merriner, Anchorage, AK, for Randall Hobbs and Hobbs Industries, Inc.
 Appeal from the United States District Court for the District of Alaska.
 Before: SCHROEDER, FLETCHER and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Alaska Natives David P. Harrison and other owners of Native Allotment No. 053702 ("Harrisons") appeal from the judgment dismissing their action against the State of Alaska, its Governor, certain state officers, and various business organizations. The district court dismissed the action against the State of Alaska with prejudice pursuant to the Eleventh Amendment. The action against the individual defendants was dismissed without prejudice.
 
 
 2
 The Harrisons contend that the district court had jurisdiction to adjudicate their claims because federal courts have jurisdiction over any deprivation of a federal constitutional right. They argue that since they cannot bring their action against the State of Alaska in its court system, we must hold that they are entitled to a federal forum. We affirm the dismissal of this action as to the State of Alaska because the Eleventh Amendment grants the State immunity from actions in law or equity filed by a citizen. Assuming that the Harrisons have not abandoned their argument raised below that the claims against the individual defendants come within the Ex parte Young limitation on the application of the Eleventh Amendment to state officers, we affirm the dismissal of these claims because the quiet title relief sought by the Harrisons directly affects the interests of the State of Alaska.
 
 I.
 The following facts are undisputed:
 
 3
 In November 1956, Louis R. Harrison, the Harrisons' predecessor in interest, entered and began to use certain public lands in Alaska. He filed a homestead entry for 160 acres, pursuant to the Alaska Native Allotment Act of 1906, Pub.L. No. 171, 34 Stat. 197 (repealed 1971). The Act authorized the Secretary of the Interior to
 
 
 4
 allot ... one hundred and sixty acres of nonmineral land in the district of Alaska to any Indian or Eskimo of full or mixed blood who resides in and is a native of said district ...; and the land so allotted shall be deemed the homestead of the allottee and his heirs in perpetuity, and shall be inalienable and nontaxable until otherwise provided by Congress. Any person qualified for an allotment as aforesaid shall have the preference right to secure by allotment the nonmineral land occupied by him not exceeding one hundred and sixty acres.
 
 
 5
 Id.
 
 
 6
 On June 25, 1959, Congress enacted the Alaska Omnibus Act, section 21 of which authorized the Secretary of Commerce to transfer to the State of Alaska by quitclaim deed "all lands or interest in lands ... pertaining to roads in Alaska, which are owned, held, administered by, or used by the Secretary in connection with activities of the Bureau of Public Roads in Alaska." Pub.L. No. 86-70, 73 Stat. 141 (1959). On June 30, 1959, the Secretary of Commerce issued an Omnibus Act quitclaim deed to the State of Alaska conveying "all rights, title and interest of Department of Commerce in and to all of the real properties listed in Schedules A, B, and C, attached hereto." Record 3 at Exh. 9. Schedule A included as a "Class B Route" the "Chickaloon Branch Road." The Chickaloon Branch (or Chickaloon River) Road crosses what was then Louis Harrison's homestead.
 
 
 7
 On January 20, 1961, Louis Harrison relinquished his homestead entry and filed for an allotment to the same lands pursuant to the Alaska Native Allotment Act, claiming use and occupancy beginning on November 11, 1956. On October 8, 1962, Louis Harrison received a Certificate of Allotment approving 160 acres (Native Allotment No. 053702). A title search did not disclose the existence of the State's alleged right-of-way along the Chickaloon River Road. The Certificate of Allotment contains no reservation of an easement.
 
 
 8
 In 1981, the State began improvement on the Chickaloon River Road within the boundaries of Native Allotment No. 053702 ("Allotment"). The State widened and filled the road and constructed a school bus turnaround. Between 1981 and 1991, the Harrisons challenged the construction, use, and maintenance of this road by the State of Alaska by various acts including physically blocking access to the Chickaloon River Road. These protests resulted in arrests and the alleged physical injury of David Harrison.
 
 II.
 
 9
 The Harrisons commenced this action on October 3, 1991. In their complaint, the Harrisons allege federal causes of action and pendent state claims.
 
 
 10
 In Count I, the Harrisons seek actual and punitive damages against the State of Alaska, Governor Hickel, Nova RiverRunners, Inc. ("Nova"), Randall Hobbs ("Hobbs"), and Hobbs Industries for acts of intentional trespass committed with the knowledge and approval of the State of Alaska and Governor Hickel. In Count II, the Harrisons seek actual damages against the State of Alaska, Governor Hickel, Nova, Hobbs, and Hobbs Industries for negligent trespass.
 
 
 11
 In Count III, the Harrisons seek damages and an order "evicting" the State's road. In Count IV, they allege that "the State claims a road right-of-way" that transects the Allotment. The Harrisons also allege that the State of Alaska and Governor Hickel assert that the Chickaloon River, which transects the Allotment, is navigable. In addition, Count IV alleges that the Matanuska Electric Association ("MEA") and the Matanuska Telephone Association ("MTA") assert a right-of-way over the Allotment "for electrical and telephone purposes." The Harrisons seek a declaration of the title and interest of the parties to the land and water and a determination of the right to control the road and that portion of the Chickaloon River which crosses the Allotment.
 
 
 12
 In Count V, the Harrisons request an injunction to enjoin the State of Alaska, Governor Hickel, Nova, Hobbs, and Hobbs Industries from maintaining and using the Chickaloon River Road, alleging it creates an attractive nuisance and causes damage to and interference with the Allotment.
 
 
 13
 In Count VI, the Harrisons allege that the State of Alaska and Governor Hickel have interfered with the quiet enjoyment of the Allotment and seek an injunction to prevent further interference, and damages against the State of Alaska, Governor Hickel, Nova, Hobbs, and Hobbs Industries.
 
 
 14
 In Count VII, the Harrisons seek actual and punitive damages against Hobbs and Hobbs Industries for committing acts of assault and battery against David Harrison on or about September 29, 1991, by running into him with a coal truck as he stood in the middle of Chickaloon River Road, within the Allotment. In Count VIII, the Harrisons seek actual and punitive damages against Hobbs and Hobbs Industries for intentional infliction of emotional distress for the conduct described in Count VII.
 
 
 15
 In Count IX, the Harrisons seek damages from the State of Alaska, Governor Hickel, Alaska State Trooper Lieutenant John Glass ("Lt. Glass"), and Alaska State Trooper Sergeant Dan Lowden ("Sgt. Lowden") for failing to exercise reasonable care by refusing to assist Gary Harrison and David Harrison after they notified Lt. Glass and Sgt. Lowden that the Harrisons intended to block access to the Allotment.
 
 
 16
 In Count X, the Harrisons seek actual, special, and punitive damages against Lt. Glass and Sgt. Lowden for assault and battery committed during the arrest of Gary Harrison for obstructing a highway as he lay prone on a road on the Allotment.
 
 
 17
 In Count XI, the Harrisons allege that Gary Harrison was falsely imprisoned by his arrest and detention. In their prayer, they seek actual, special, and punitive damages against the State of Alaska, Governor Hickel, Lt. Glass, and Sgt. Lowden for false imprisonment.
 
 
 18
 Finally, in Count XII, the Harrisons seek actual and punitive damages against the State of Alaska, Governor Hickel, Lt. Glass, and Sgt. Lowden for civil rights violations based on the Harrisons' "race, color, and national origin." In addition, the Harrisons allege that Governor Hickel, Lt. Glass, and Sgt. Lowden violated their federal rights by (1) failing to implement sections 4 and 6 of the Alaska Statehood Act, to protect the Harrisons' quiet enjoyment of the Allotment, (2) failing to prevent trespasses on the Allotment, (3) conspiring to deny the Harrisons the right to petition the government to redress their grievances, (4) abusing prosecutorial discretion by filing criminal charges against Gary and David Harrison although the state actors were aware that the title dispute prompted the alleged criminal conduct, (5) failing to comply with eminent domain and quiet title law, (6) denying the Harrisons equal protection under the law by favoring other users of the road, (7) taking the Harrisons' property without compensation, and (8) conspiring with Hobbs, Hobbs Industries, and Nova to defeat the Harrisons' right to peaceful assembly on various dates including September 27, 1991 and September 30, 1991.
 
 III.
 
 19
 On October 30, 1991, the Harrisons filed a motion for partial summary judgment and a declaration that (1) the district court has jurisdiction over this action; (2) the Harrisons have title to the Allotment free and clear of any right-of-way for the Chickaloon Branch Road or the utility rights-of-way asserted by MEA and MTA; (3) the Chickaloon River is non-navigable; and (4) the Harrisons are the owners of the river.
 
 
 20
 On November 4, 1991, the Attorney General of the State of Alaska filed a motion to dismiss all the claims against the moving parties on behalf of the State of Alaska, Governor Hickel, Lt. Glass, and Sgt. Lowden. On November 8, 1991, the district court denied the Harrisons' motion for a preliminary injunction. The court ordered the parties to be prepared to argue on January 10, 1992 whether the Eleventh Amendment required a dismissal of the action against the State of Alaska. The Harrisons filed their opposition to the motion for dismissal on November 22, 1991. On the same date, Hobbs and Hobbs Industries filed a motion in support of the Attorney General's motion to dismiss. On December 13, 1991, oral argument on the applicability of the Eleventh Amendment to this action was rescheduled for January 9, 1992.
 
 
 21
 On January 9, 1992, the district court granted the State of Alaska's motion and dismissed with prejudice the action against the State on the ground that the Eleventh Amendment bars any action in federal court brought by a citizen against a state. The court dismissed the complaint against Governor Hickel, Lt. Glass, and Sgt. Lowden without prejudice. The court requested that the Harrisons file a new complaint alleging facts clearly showing the state actors are being sued for conduct they committed in their individual capacity. The court also dismissed the complaint against the remaining defendants without prejudice. The court invited counsel for the Harrisons to file a request for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b).
 
 
 22
 On February 21, 1992, the Harrisons filed a written motion requesting that the district court file a certification with this court setting forth the following questions:
 
 
 23
 1. Can the State refuse to consent to be sued to quiet title to a disputed right-of-way and/or easement which conflicts with a restricted Native allotment, thereby barring the Natives' ability to sue the State directly?
 
 
 24
 2. Can State officials acting under color of State law be sued in their official capacity for violation of the Federal Civil Rights Act by Alaska Natives?
 
 
 25
 Record 37 at 2.
 
 
 26
 The district court granted the Harrisons' request and filed a written certification pursuant to Section 1292(b) on February 27, 1992. On March 20, 1992, the district court entered a minute order denying the Harrisons' motions for a preliminary injunction, a declaratory judgment, and summary judgment.
 
 
 27
 On April 13, 1992, a motions panel of this court denied the petition for permission to appeal pursuant to Section 1292(b). On April 23, 1992, the district court entered an order entitled "Final Judgment" which was prepared by counsel for Hobbs and Hobbs Industries. It reads as follows:
 
 
 28
 Insofar as this court ruled on January 9, 1992, that this case was dismissed, with prejudice, against the State of Alaska and dismissed, without prejudice, as to all other defendants, and the Ninth Circuit Court of Appeals dismissed plaintiffs' 28 U.S.C. Sec. 1292(b) petition on April 13, 1992, this court hereby enters final judgment on behalf of defendants, dismissing the State of Alaska with prejudice and all other defendants without prejudice.
 
 
 29
 The Harrisons filed a timely notice of appeal on May 15, 1992, "from the final judgment entered in this action on the 23rd day of April, 1992." Record 45 at 1.
 
 IV.
 
 30
 Our first task in reviewing this matter is to determine the precise rulings of the district court that are being challenged by the Harrisons. The district court dismissed the action against the State of Alaska with prejudice. The claims against Governor Hickel, Lt. Glass, and Sgt. Lowden were dismissed without prejudice to being refiled in a complaint that would clearly show that they were being sued in their individual capacities. The court gave no reason for dismissing the claims against Hobbs, Hobbs Industries, Nova, MEA, and MTA without prejudice.
 
 
 31
 In their appeal to this court, the Harrisons do not challenge the district court's ruling that the claims against Governor Hickel, Lt. Glass, and Sgt. Lowden were insufficient because it is not clear whether the state officers are being sued in their official capacity. The Harrisons have also failed to challenge the entry of a final judgment in favor of the remaining defendants.[1]
 
 
 32
 The Harrisons frame the issue we must decide as follows:
 
 
 33
 Where the State claims a highway right-of-way across an Alaska Native Allotment and the Native owners of the allotment disput [sic] the State's claim, which court can hear their dispute and what procedures apply?
 
 
 34
 Appellant's Brief at 2.
 
 
 35
 The Harrisons conclude their opening brief with a paragraph headed "Relief Requested," stating as follows:The [c]ourt is requested to recognize the right of the Harrison Natives to proceed in a direct action against the State of Alaska so that the issue can be resolved in federal court without requiring the Native allotee[s] to proceed against the United States. The Harrisons should also be allowed to collect money damages from the [S]tate for the trespass from at least 1981 when the [S]tate began its adverse occupancy of the Harrison allotment.
 
 
 36
 Appellant's Brief at 19.
 
 
 37
 The Harrisons' reply brief is also limited to a refutation of the arguments advanced in the appellees' briefs in support of the dismissal of the action against the State of Alaska with prejudice. Accordingly, our analysis is confined to the narrow issue presented to us for resolution by the Harrisons: Is the Eleventh Amendment a bar to an action against the State of Alaska brought by the owners of a Native allotment to quiet title to a right-of-way asserted by the State and for money damages against the State for trespass?[2] "Whether a party is immune from suit under the Eleventh Amendment is a question of law that we review de novo." Durning v. Citibank, N.A., 950 F.2d 1419, 1422 (9th Cir.1991).
 
 V.
 
 38
 Relying on First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), the Harrisons argue that "[t]he Fifth Amendment, as applied to the states by the Fourteenth Amendment, by its own force provides a basis for a federal court asserting jurisdiction over and awarding damages against a state." Appellant's Brief at 8. The Harrisons' reliance on First Lutheran Church is misplaced. That decision does not involve an action brought against a state. The court did not consider a takings claim which would present an exception to the assertion by a state of Eleventh Amendment immunity. More importantly, the issue we must decide does not depend on whether the district court had subject matter jurisdiction over the Harrisons' claims. The Eleventh Amendment is a bar to the assertion of federal question jurisdiction against a state. Hans v. Louisiana, 134 U.S. 1, 19-21, 10 S.Ct. 504, 508-09, 33 L.Ed. 842 (1890); see Durning, 950 F.2d at 1422-23 ("[T]he Supreme Court has judicially extended [the Eleventh Amendment's] reach to bar federal courts from deciding virtually any case in which a state ... is a defendant--even where jurisdiction is predicated upon a federal question...."). Footnote nine of First Lutheran Church, cited by the Amendment affirmatively commands the remedy of just compensation for a taking, and is not merely a limit on the power of state governments. 482 U.S. at 316 n. 9, 107 S.Ct. at 2386 n. 9. It does not address the question of the Eleventh Amendment's application to federal question jurisdiction.
 
 
 39
 The Harrisons contend that the First Amendment assures them the right to redress their grievances in court. They argue that because the Alaska Supreme Court held in Heffle v. State, 633 P.2d 264, 269 (Alaska 1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), that they have no jurisdiction over property disputes, an affirmance of the dismissal of this action pursuant to the Eleventh Amendment would deny them their constitutional right to petition the government for a redress of their grievances.
 
 
 40
 The Harrisons have not cited any authority to support the proposition that the lack of a forum to adjudicate a constitutional claim violates the right "peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Nevertheless, the lack of any forum to adjudicate a colorable constitutional claim may raise a serious question. See Davis v. Passman, 442 U.S. 228, 242, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979) ("[T]he class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights."); cf. Webster v. Doe, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (a "serious constitutional question ... would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim" (citations and internal quotation marks omitted)); id. at 611-12, 108 S.Ct. at 2058 (Scalia, J., dissenting) ("[If] there is any truth to the proposition that judicial cognizance of constitutional claims cannot be eliminated, it is, at most, that they cannot be eliminated from state courts, and from this Court's appellate jurisdiction over cases from state courts ... involving such claims.").
 
 
 41
 The Harrisons have not demonstrated, however, that they do not have a suitable forum for their takings claim. The Harrisons have not brought an action against the federal government to compel the Interior Department to adjudicate the validity of the State of Alaska's assertion of a right-of-way over Native Allotment No. 053702. In Aguilar v. United States, 474 F.Supp. 840 (D.Alaska 1979), the plaintiffs sued the United States, claiming that it had conveyed land to Alaska that rightfully belonged to plaintiffs under the Alaska Native Allotment Act. Id. at 842. The Government had refused to review the plaintiff's request that it determine the validity of their claims. Id. at 846.
 
 
 42
 The court in Aguilar held that the rights of the plaintiffs could not be determined without a formal adjudication by the Interior Department. Id. (citing Pence v. Kleppe, 529 F.2d 135, 137 (9th Cir.1976)). The court stated: "If the [Government] has mistakenly or wrongfully conveyed land to the State of Alaska to which plaintiffs have a superior claim, it is the responsibility of the [Government] to recover that land." Id. at 847. The court ordered the Interior Department to adjudicate the plaintiffs' claims. Id.
 
 
 43
 The Interior Board of Land Appeals (IBLA)[3] acquiesced in the district court's holding in Aguilar:
 
 
 44
 It now appears clear following the decision in Aguilar v. United States, 474 F.Supp. 840 (D.Alaska 1979), that where title to land which a Native allotment applicant seeks has passed out of the control of the Department, which therefore lacks the authority to directly adjudicate the claim, the Department nonetheless has a continuing duty to the Native allotment claimant to evaluate the claim of a prior valid right, and to determine whether the land was erroneously conveyed so as equitably to require the Government to seek a reconveyance of the land.... The sole purpose of the Aguilar proceeding is to determine whether the United States should sue to recover title to the patented land.
 
 
 45
 Terry L. Wilson, 92 Int.Dec. 109, 116 (IBLA 1985). The decision of the IBLA is subject to review by an Article III court pursuant to the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A). See Dredge Corp. v. Conn, 733 F.2d 704, 707 (9th Cir.1984) (Ninth Circuit reviews decisions of IBLA to determine if they are "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with law" (citations and internal quotation marks omitted)).
 
 
 46
 Although 43 U.S.C. Sec. 1166 bars efforts by the United States to vacate or annul a patent more than six years after the original grant, section 1166 does not apply to cases involving Native allotments. In Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923), the Court held that the United States may act even after the six-year statute of limitations has elapsed "because the relation of the Government to [Indian allotment applicants] is such as to justify or require its affirmative intervention." Id. at 234, 43 S.Ct. at 346; see Wilson, 92 Int.Dec. at 119 (same).
 
 
 47
 The Harrisons assert that "countless letters have been written to the Congressional Delegation, to the Assistant Solicitor for the Department of Interior in Washington, D.C., to the Regional Solicitor, to the Alaska Directors of the Bureau of Indian Affairs and the Bureau of Land Management." Appellant's Reply Brief at 1. The Harrisons have never sued the United States, however, to compel it to adjudicate their dispute with the State of Alaska. They have thus failed to demonstrate that they have been denied a judicial forum.
 
 
 48
 The Harrisons further argue that the district court erred in dismissing the action against the State of Alaska because the State agreed to the terms and conditions of section 4 of the Alaska Statehood Act, thereby waiving its immunity. See Alaska Const. art. XII, Secs. 12, 13. Section 4 of the Statehood Act provides that
 
 
 49
 [a]s a compact with the United States said State and its people do agree and declare that they forever disclaim all right and title ... to any lands or other property (including fishing rights), the right or title to which may be held by any Indians, Eskimos, or Aleuts (hereinafter called natives) or is held by the United States in trust for said natives.
 
 
 50
 Alaska Statehood Act, Sec. 4, Pub.L. No. 85-508, 72 Stat. 339 (1958). The Harrisons contend that if Alaska's disclaimer is to have any legal effect, Native Alaskans must have access to federal courts to enforce their property rights. We disagree. We give effect to a state's waiver of Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." Atascadero State Hospital v. Scanlon, 473 U.S. 234, 239-40, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (citation and internal quotation marks omitted) (alteration in original).
 
 
 51
 Well established law governs ... waiver of Eleventh Amendment immunity.... A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts and "[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court."
 
 
 52
 Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305-06, 110 S.Ct. 1868, 1873, 109 L.Ed.2d 264 (1990) (quoting Atascadero, 473 U.S. at 241, 105 S.Ct. at 3146) (citation omitted) (alteration in original).
 
 
 53
 There is simply no indication that by acquiescing in section 4, Alaska consented to be sued in federal court. The statute does not provide for a general consent to suit. Cf. id. at 307, 110 S.Ct. at 1873 (where state statute provides that "venue ... shall be laid within a county or judicial district, established by one of said States or by the United States" and also includes general consent to suit, Eleventh Amendment immunity is waived).
 
 
 54
 The Harrisons assert that the State of Alaska stands in the shoes of the U.S. Department of Commerce because it deeded the Chickaloon River Road to the State. Since 25 U.S.C. Sec. 345 includes a waiver of the federal government's sovereign immunity in allotment cases, the Harrisons argue that the State of Alaska is also subject to the suit in federal court.
 
 
 55
 The argument that section 345 authorizes an action by a private citizen against a state to quiet title lacks merit. Section 345 does not contain a waiver of a state's immunity under the Eleventh Amendment. Congress' intent to abrogate a state's immunity must be unequivocally expressed. Atascadero, 473 U.S. at 242, 105 S.Ct. at 3147.
 
 
 56
 Finally, the Harrisons assert that the court can imply consent from the fact that the State of Alaska has brought criminal actions against the Harrisons for blocking the Chickaloon River Road. The Harrisons argue that the State of Alaska has thereby asserted title to the Chickaloon River Road. The Harrisons have not cited authority supporting the proposition that a state waives its Eleventh Amendment immunity by bringing criminal charges against a party in state court and our research has not disclosed any.
 
 CONCLUSION
 
 57
 The record shows that the State of Alaska has not consented to be sued to adjudicate the State's interest in Native Allotment No. 053702. Without such consent, or an express abrogation of Eleventh Amendment immunity by Congress, a private citizen cannot maintain an action against a state.
 
 
 58
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Harrisons did not appeal from the denial of their request for a preliminary injunction pursuant to 28 U.S.C. Sec. 1292(a), nor do they seek reversal of that order in this appeal. The Harrisons do not seek review of the merits of the order denying their motion for a declaratory judgment. In their reply brief, the Harrisons erroneously assert that "[t]here has been no ruling on the Harrisons' Motion for Declaratory Judgment." Appellants' Reply Brief at page 2. As noted above, the record shows that the Harrisons' motions for summary judgment and declaratory judgment were denied in a minute order dated March 20, 1992
 
 
 [2]
 Issues which were litigated before the district court and not addressed on appeal are deemed abandoned. See Weston v. Lockheed Missiles & Space Co., 881 F.2d 814, 815-16 (9th Cir.1989)
 
 
 [3]
 The Interior Board of Land Appeals is part of the Office of Hearings and Appeals which is a component of the Office of the Secretary of the Interior. It is authorized to hear, consider, and determine matters within the jurisdiction of the Department of the Interior involving hearings, appeals, and other review functions of the Secretary of the Interior
 Brandt-Erichsen v. United States Dep't of the Interior, 999 F.2d 1376, 1379 n. 1 (9th Cir.1993).