96 F.3d 355
 96 Cal. Daily Op. Serv. 6613, 96 Daily Journal
D.A.R. 10,824
Franklin SILAS, Plaintiff-Appellant,
v.
Bruce BABBITT, Secretary of the Interior; United States of
America, Defendants-Appellees,
State of Alaska, Defendant-Intervenor-Appellee.
 No. 95-36015.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Sept. 4, 1996.
 
 William E. Caldwell, Alaska Legal Services Corporation, Fairbanks, AK, for plaintiff-appellant.
 Ellen J. Durkee, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendants-appellees.
 Paul R. Lyle, Assistant Attorney General, Fairbanks, AK, for defendant-intervenor-appellee.
 Appeal from the United States District Court for the District of Alaska, James K. Singleton, District Judge, Presiding. D.C. No. CV-93-00035-JKS.
 Before: GOODWIN, BRUNETTI and KOZINSKI, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 Franklin Silas applied in 1971 for an allotment of two 40-acre parcels, (herein Parcel A and Parcel B), under the Alaska Native Allotment Act of 1906 (the ANAA), 34 Stat. 197, amended by 70 Stat. 954 (1956) (repealed 85 Stat. 710 (1971))(former 43 U.S.C. §§ 270-1 to 270-3). The application alleges on its face that Silas' use commenced September 1, 1965. The Bureau of Land Management (BLM) denied the application because the State of Alaska had previously selected the two parcels in June of 1961 and August of 1963 respectively, making the lands inappropriate for allotment to anyone whose use and occupancy began after those dates. Silas received notice of his right to appeal, but no appeal was filed.
 
 
 2
 Fourteen years later, in 1986, Silas filed a petition requesting the reinstatement of his application. His 1986 petition alleged that his 1971 application had stated the wrong commencement date; it should have stated that his use and occupancy began in 1960 or 1961. The Secretary denied that petition, concluding that Silas' application had been properly denied as a matter of law the first time, that no appeal had been taken, and that the new evidence was insufficient to warrant a reinstatement of the application after fourteen years. The district court affirmed the Secretary, and we affirm the district court.
 
 
 3
 Silas asserts two errors. First, he argues that the Secretary violated due process by denying both his initial application and his petition for reinstatement without first holding a hearing. Second, he argues that Section 905(a) of the Alaskan National Interest Lands Conservation Act (ANILCA), 43 U.S.C. § 1634(a), mandates the reinstatement of his application.[1]
 
 II. DUE PROCESS
 A. Rejection of Silas' Initial Application
 
 4
 In Pence v. Kleppe, 529 F.2d 135 (9th Cir.1976)(" Pence I "), we held that the Secretary's adjudication of allotment applications must comport with due process. We left it to the Secretary to determine what procedures best meet the requirements of due process, but held that
 
 
 5
 at a minimum, applicants whose claims are to be rejected must be notified of the specific reasons for the proposed rejection, allowed to submit written evidence to the contrary, and, if they request, granted an opportunity for an oral hearing before the trier of fact where evidence and testimony of favorable witnesses may be submitted before a decision is reached to reject an application for an allotment.
 
 
 6
 Id. at 143. Silas relies heavily on this holding for his argument that the rejection of his initial application without a hearing violated his right to due process. Silas' reliance is misplaced, however, given our refinement of Pence I in Pence v. Andrus, 586 F.2d 733 (9th Cir.1978)(" Pence II ").
 
 
 7
 In Pence II we reviewed the regulations promulgated by the Secretary in response to our mandate in Pence I. One aspect of the regulations vigorously litigated in Pence II was the Secretary's continued ability to reject an application without a hearing when the face of the application itself failed to establish qualifying use. We held that the Secretary's authority did not violate the Pence I mandate:
 
 
 8
 If, for example, an applicant files a claim but does not allege that he or she is an Alaska Native, we cannot say that rejection of the claim without hearing violates the Pence I requirements. The aggrieved applicant may always appeal the decision to the IBLA, 43 C.F.R. § 4.400 et seq. (1976), which can correct error by the BLM.
 
 
 9
 Id. at 743.
 
 
 10
 While we explicitly limited our holding in Pence II to the question whether the Secretary's regulations complied with the mandate of Pence I, id. at 738-739, we now hold that the regulations also satisfy administrative due process in such "entitlement" cases.
 
 
 11
 Courts consider three factors in determining what process is due: (1) the private interest affected by the governmental action; (2) the government's interests; and (3) the risk of erroneous deprivation. Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Acknowledging the significant interest a Native Alaskan has in gaining title to traditional subsistence lands, the other factors justify the procedures used in Silas' case. Requiring an oral hearing in those cases where the face of the application shows that the applicant is not qualified would place an undue burden on the government's resources. Further, the process employed in Silas' case posed little risk of an erroneous deprivation given the right of appeal.[2] That Silas chose not to exercise that right is not the fault of the Secretary. The Constitution requires due process of law; it does not require an endless number of opportunities for one to assert his rights.
 
 
 12
 B. Rejection of the Petition for Reinstatement
 
 
 13
 Nor did the Secretary err in declining to hold a hearing prior to rejecting reinstatement of Silas' application, for Silas failed to present sufficient evidence to warrant a hearing. With regard to Parcel B, the only new evidence Silas provided was his own affidavit. One cannot create an issue of fact by simply contradicting one's own previous statement. Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1410 (9th Cir.1987). With regard to Parcel A, Silas filed three witness statements relating that Silas, along with other Minto people, used Parcel A prior to 1965. These statements are not sufficiently persuasive to warrant an oral hearing. Further, Silas never presented a reason for his fourteen year delay. The presentation of new evidence does not warrant the reopening of an administrative case absent some explanation of why the evidence was not available sooner. I.N.S. v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992). Silas received all the process due.
 
 III. SECTION 905(a)
 
 14
 Silas alternatively argues that Section 905(a) of the Alaskan National Interest Lands Conservation Act (ANILCA) mandates the reinstatement of his application. When Congress repealed the ANAA in 1971, it made provisions in ANILCA for the legislative approval of particular allotment applications. Section 905(a) of ANILCA provides in pertinent part:
 
 
 15
 (1) Subject to valid existing rights, all Alaska Native allotment applications made pursuant to the [ANAA] which were pending before the Department of the Interior on or before December 18, 1971, and which describe either land that was unreserved on December 13, 1968 ... are hereby approved ... except where provided otherwise by paragraph (3), (4), (5), or (6) of this subsection....
 
 
 16
 43 U.S.C. § 1634(a)(1) (1996). Paragraph (4) and (5) then address lands where either the State or a Village Corporation has also laid claim to the land. In those instances, ANILCA provides that the application "shall be adjudicated pursuant to the requirements of the [ANAA]," rather than legislatively approved under paragraph (1). 43 U.S.C. § 1634(a)(4) & (5) (1996).
 
 
 17
 Silas claims that this statute, by its plain terms, mandates that his application be readjudicated under the ANAA because his application was pending before December 18, 1971, and described land which was unreserved on December 13, 1968.
 
 
 18
 We disagree. Contrary to Silas' contentions, ANILCA's requirement that the described applications be "adjudicated pursuant to the [ANAA]" does not dictate that the Secretary re adjudicate those applications which were already adjudicated under the ANAA. Indeed, such an interpretation would directly contradict the purpose of Section 905(a). "Congress' intent in enacting § 905 was to facilitate approval of the backlog of Native allotment applications by dispensing with the usual time-consuming adjudication procedures." Olympic v. United States, 615 F.Supp. 990, 994 (D.Alaska 1985). If the Secretary were forced to readjudicate those applications already properly rejected under the ANAA, the backlog of applications would actually increase. Accordingly, we hold that Section 905(a) of ANILCA does not mandate the reopening of applications previously adjudicated under the ANAA.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Silas also argued in his brief that the procedures stipulated to by the parties in Aguilar v. United States, 474 F.Supp. 840 (D.Alaska 1979), apply to him-mandating the reinstatement of his application. However, Silas explicitly withdrew this claim at oral argument
 
 
 [2]
 In 1972, administrative appeals of allotment applications were not limited to the record before the BLM. 43 C.F.R. § 4.415 (1972) provides in pertinent part: "Request for hearings on appeals involving questions of fact. Either an appellant or an adverse party may, if he desires a hearing to present evidence on an issue of fact, request that the case be assigned to an examiner for such a hearing."