**Walter LORD, Plaintiff,**

**v.**

**Bruce BABBITT, Secretary of the United States Department of the Interior, and the United States of America, Defendants.**

**No. F94–0011 CV (JKS).**

United States District Court,
D. Alaska.

Oct. 1, 1996.

Robert A. Sparks, Law Office of Robert A. Sparks and Robert John, Law Offices of Robert John, Fairbanks, Alaska, for plaintiff.

Dean K. Dunsmore, Department of Justice, Environment & Natural Resources Division, Anchorage, Alaska, for defendants.

## ORDER

DENYING DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SINGLETON, Chief Judge.

Walter Lord ("Lord") brings this action seeking to establish his right to a Native Allotment in the vicinity of Fairbanks, Alaska. The defendants (collectively called "the government") argue that the land in question has been patented to the State of Alaska, a necessary party, over whom this Court lacks jurisdiction and, alternatively, that the running of the applicable statute of limitations deprives this Court of jurisdiction. The government moves to dismiss, and Lord moves for summary judgment. The Court concludes that it has jurisdiction over this case but that unresolved questions about the notice Lord received (or did not receive) of the adverse agency action regarding rejection of his allotment application prevents this Court from resolving the statute of limitations issue. Therefore, the motion to dismiss and the motion for summary judgment are de-

nied.[1] The Court's reasons for this decision follow:

## BACKGROUND

On May 24, 1957, Lord, an Alaska Native, filed an Alaska Native Allotment application for a parcel of land on the Tanana River in Fairbanks, Alaska, pursuant to the Alaska Native Allotment Act of 1906, 43 U.S.C. §§ 270–1 through 270–3 (1970) (repealed 1971). Docket No. 48 (Lord's second amended complaint). Lord began using the land immediately after filing his application in 1957. Docket No. 66, Appendix 1 (Walter Lord affidavit). The Department of the Interior, Bureau of Land Management ("BLM") sent Lord a notice to his last known address, General Delivery, Fairbanks, Alaska, on January 4, 1963 informing Lord that he needed to send to the BLM proof of his use and occupancy of the land by May 24, 1963 to prevent his allotment application from expiring. Docket No. 56, Exh. 1, Attachment B. Lord did not respond. He claims that he did not personally receive notice because the notice was sent to General Delivery, Fairbanks, Alaska instead of to the mailbox in Fairbanks at 2 mile Peger Road. Docket No. 66, Appendix 1 (Walter Lord affidavit). Defendants, however, point out that "General Delivery, Fairbanks, Alaska" was the address used by the BLM because Lord put that address on his application. See Docket No. 56, Exh. 1, Attachment A (allotment application).

On May 31, 1963, the BLM sent a notice to Lord's last known address, General Delivery, Fairbanks, Alaska, stating that his allotment application had been terminated due to his failure to submit proof of use and occupancy by May 24, 1963 which would have been within six years of the filing of his application. Docket No. 56, Exh. 1, Attachment C. The notice was sent certified mail, and the BLM received a return receipt indicating its delivery. Id., Attachment D. The signature

---

1. On August 9, 1996, the Court issued a tentative decision (Docket No. 73) regarding the government's motion to dismiss (Docket No. 56) and Lord's motion for summary judgment (Docket No. 66). In that order, the Court tentatively concluded that both motions should be denied, gave its underlying reasons for that conclusion, and directed both sides to respond to the tentative order. After considering the responses from both sides (Docket Nos. 74 & 75), the Court still concludes that the government's motion to dismiss and Lord's motion for summary judgment should be denied. Docket Nos. 56 and 66.

on the return receipt was "Etta Mae Lord." *Id.* Lord claims that he did not personally receive the notice but that his wife, Etta Mae Lord, had received it. Docket No. 66, Appendix 1 (Walter Lord affidavit). He further claims that he was not aware that his wife had received the notice "until as long as many years after it was signed for." *Id.* Lord never appealed the 1963 BLM decision.

In June of 1972, the State of Alaska amended its selection of land to specifically select the land at issue in this case. Docket No. 56, Exh. 1, Attachment F. Tentative approval was given regarding the State's selection on February 19, 1976. *Id.,* Attachment G. Subsequently, the Alaska National Interest Lands Conservation Act (ANILCA), 43 U.S.C. § 1634 (1980) was enacted. Pursuant to this statute, "all right, title and interest of the United States in and to such lands is deemed to have vested in the State of Alaska as of the date of the tentative approval...." ' 43 U.S.C. § 1635(c). On November 12, 1985, the parcel of land at issue was patented to the State of Alaska under patent No. 50–86–0043. Docket No. 56, Exhibit 4 at ¶ 12 and Attachment H.

Lord claims that it was only after his attorney received letters from the BLM in 1994 that he realized that his application would not be reinstated. Docket No. 66, Appendix 1 (Walter Lord affidavit). Furthermore, Lord claims that it was not until he received the answer to his complaint in the instant case that he realized the United States had conveyed the land to the State of Alaska. *Id.*

Lord filed his initial complaint on May 24, 1994. He asserts that the Court has jurisdiction pursuant to 25 U.S.C. § 345, 28 U.S.C. § 1331, 43 U.S.C. § 1353 and 43 U.S.C. § 1634(a)(1).

The government has filed a motion to dismiss. Docket No. 56. Lord opposes this motion and also moves for summary judgment. Docket No. 66. The government replies at Docket No. 70. In response to this Court's tentative order (Docket No. 73), the parties have filed additional briefings (Docket Nos. 74 & 75).

## DISCUSSION

*Jurisdiction:*

■ A party bringing an action in federal court bears the burden of establishing the court's jurisdiction. The United States and its agencies may not be sued, absent a waiver of sovereign immunity. *Federal Deposit Ins., Corp. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Therefore, when a party seeks to sue the United States, he must establish that Congress has waived sovereign immunity and permitted the suit. In this case, Lord relies upon 25 U.S.C. § 345 both for this Court's jurisdiction and to establish a waiver of sovereign immunity. *See Pence v. Kleppe,* 529 F.2d 135, 138–39 (9th Cir.1976). The government argues that this Court lacks jurisdiction because § 345, which grants jurisdiction and waives immunity, is subject to a statute of limitations which has expired and because the land at issue is no longer subject to the government's jurisdiction because it has been patented to the State of Alaska. *See West v. Standard Oil Co.,* 278 U.S. 200, 211–12, 49 S.Ct. 138, 140–41, 73 L.Ed. 265 (1929) and *Germania Iron Co. v. United States,* 165 U.S. 379, 383, 17 S.Ct. 337, 339, 41 L.Ed. 754 (1897); *see also Nichols v. Rysavy,* 610 F.Supp. 1245, 1252 (D.S.D.1985), *aff'd on other grounds,* 809 F.2d 1317 (8th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 103 (1987).

■ The government concedes that in *Donald Hotch v. United States,* No. J94–002 CV (JWS), this Court held that it had jurisdiction even though title to the land had been conveyed to the State of Alaska. The government distinguishes *Hotch* by pointing out that in *Hotch* there was a controlling stipulation in which the Department of the Interior had agreed to continue to process the allotment application. In *Aguilar v. United States,* 474 F.Supp. 840, 843 & 846 (D.Alaska 1979), the court held that if the government conveyed to the State land that should have been conveyed to an Indian allottee, the conveyance would be void and the government would be obligated to take whatever steps were necessary to recover the land. In *Aguilar,* the government had rejected the application for an allotment on the ground that the land had already been patented to

the State. There was no stipulation to continue to process the allotment application in that case.

The government, however, seeks to distinguish *Aguilar* by pointing to 43 U.S.C. § 1635(c)(1) which was enacted subsequent to *Aguilar* and which purports to confirm tentative approvals of state land selections "subject only to valid existing rights and Native selection rights under the Alaska Native Claims Settlement Act." 43 U.S.C. § 1635(c)(1). The government's reliance on 43 U.S.C. § 1635(c)(1) is misplaced. In *Aguilar*, the court held that use and occupancy by a potential allottee constituted prior existing rights entitled to protection. *Aguilar*, 474 F.Supp. at 843. Presumably, § 1635(c)(1) was enacted with that assumption in mind. This view of the statute is reinforced by § 1634(a)(1) which was enacted with the intention of protecting, among the class of "pending" allotment applications, those that had been erroneously rejected. Consequently, if Lord's application was erroneously rejected by the government, the subsequent patent to the State, even though legislatively confirmed, was subject to Lord's allotment rights, and the government may be required to help Lord vindicate those rights.

*Aguilar* disposes of the government's argument that conveyance to the State, even though pursuant to express statutory provision, insulates its treatment of Lord's application from judicial review. *Aguilar*, 474 F.Supp. 840. Therefore, the most reasonable interpretation of congressional intent is that any conveyance to the State was subject to prior existing rights, including the rights of Indian allottees.

*Application of Six-year Statute of Limitations pursuant to 28 U.S.C. § 2401(a):*

The government contends that this Court lacks jurisdiction to review the 1963 BLM decision to terminate Lord's allotment application because the applicable statute of limitations had already run prior to commencement of this suit.[2] Docket Nos. 56 & 70. It claims that the statute of limitations is a jurisdictional bar rather than a waivable defense. It contends that because there is not a more specific statute of limitations applicable, this action is governed by the general statute of limitations found in 28 U.S.C. § 2401(a) which states "[e]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This general statute of limitations has been applied to actions under 25 U.S.C. § 345. *See Big Spring v. United States Bureau of Indian Affairs*, 767 F.2d 614, 616 (9th Cir.1985); *Christensen v. United States*, 755 F.2d 705, 707 (9th Cir.1985), *cert. denied*, 476 U.S. 1181, 106 S.Ct. 2914, 91 L.Ed.2d 543 (1986).

Lord argues that no statute of limitations applies and cites to *Harrison v. Hickel*, 6 F.3d 1347, 1353 (9th Cir.1993). In response, the government argues that any reliance on *Harrison* is misguided because the reasoning in *Harrison* is not applicable. *Harrison* was a suit against the State by a private party. Although the statute of limitations was not at issue in that case, the *Harrison* court mentioned in *dicta* that the relevant statute of limitations could not be used to bar a suit by the United States to enforce an Indian's rights because of the special relationship between the government and Indians. *Id.* at 1353. *See also* Docket No. 49 (the government' objections to report and recommendation). In contrast with *Harrison*, the government points out, the instant case is a suit brought *against* the government and, therefore, in that type of situation Lord is subject to the applicable statute of limitations. *See United States v. Mottaz*, 476 U.S. 834, 851, 106 S.Ct. 2224, 2234, 90 L.Ed.2d 841 (1986); *see also Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir.), *cert. denied*, 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *see also Big Spring v. United States Bureau of Indian Affairs*, 767 F.2d 614, 617 (9th Cir.1985).

Lord also argues that if a statute of limitations did apply to judicial review of the rejection of an allotment, it would not apply to him because Congress enacted 43 U.S.C.

2. The government concedes that to the extent Lord is seeking review of the 1994 BLM decision, Lord's action is not time barred. Docket No. 70.

§ 1634(a)(1) [Alaska National Interest Lands Conservation Act (ANILCA) § 905(a) ] nullified the BLM's rejection of his application and congressionally approved his allotment request. He argues that "the enactment of ANILCA was a legislative waiver of any statute of limitations for actions to determine interests of Alaska Indians in Allotments, whose applications were denied without an opportunity for an oral hearing prior to December 18, 1971." Docket No. 66 at 6. This argument is foreclosed by *Silas v. Babbitt*, 96 F.3d 355 (9th Cir. September 4, 1996) which was decided after briefing was completed in this case. In *Silas*, the Ninth Circuit held that only those applications pending on or before December 18, 1971 were legislatively approved. If an application had been properly denied before that date, it was not "pending" and therefore did not have to be readjudicated. If Lord's application was legally terminated in 1963, which is the issue before this Court, then it was not confirmed by Congress in ANILCA.

In addition, Lord contends that the statute of limitations should not apply to this case because the rejection of his application was "in violation of the Department of Interior's own interpretation of the 'statutory life'[3] regulation and was also in violation of the Department's regulations in effect at the time of filing of Lord's application" and because his allotment application was rejected without a hearing. Docket No. 66 at 10.

▮ The six-year statute of limitations pursuant to 28 U.S.C. § 2401(a) applies to this case. *Cramer v. United States*, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923) and *Harrison v. Hickel*, 6 F.3d 1347 (9th Cir. 1993) are distinguishable from this case. The *Cramer* Court was not addressing 28 U.S.C. § 2401(a). Instead, *Cramer* involves a six-year limitations of 43 U.S.C. § 1166 which bars efforts by the United States to vacate or annul a patent more than six years after the original grant. The *Cramer* Court held that the limitations of § 1166 does not apply "because the relation of the Government to [Indian claimants] is such as to justify or require its *affirmative intervention.*" *Cramer*, 261 U.S. at 234, 43 S.Ct. at 346 (emphasis added). The *Cramer* Court was discussing cases brought by the United States and was not discussing cases brought against the United States. Although *Cramer* alludes to special treatment for Indians, it has been determined that even Indians are not exempt from statutes of limitations governing actions against the United States. *See Mottaz*, 476 U.S. at 851, 106 S.Ct. at 2234 (holding that the statute of limitations for the Quiet Title Act applies to Indians as well as to other litigants). *Cramer* should not be applied to this case because it was dealing with the relevant time period for the United States to vacate or annul a patent on behalf of Natives instead of the relevant time period for a Native to file suit against the United States under 25 U.S.C. § 345. *Harrison* cites to *Cramer* and merely states in *dicta* that § 1166 does not apply to Native allotment cases. *Harrison*, 6 F.3d at 1353. In context, the Ninth Circuit is referring to actions by the United States not actions against the United States.

In fact, the Ninth Circuit has discussed this issue in cases involving 25 U.S.C. § 345 and has held that the six-year statute of limitations under 28 U.S.C. § 2401(a) "applies to *all* actions brought under § 345, whether the relief requested is legal or equitable." *Christensen v. United States*, 755 F.2d 705, 707 (9th Cir.1985) (emphasis in original) (plaintiffs were American Indians, suing under 25 U.S.C. § 345). Therefore, regardless of the fact that Lord is a Native American, the general six-year statute of limitations, 28 U.S.C. § 2401(a), applies to this case.

---

**3.** Basically, Lord argues that the BLM violated its own "statutory life" regulation in the BLM "Native Allotment Handbook" ("Handbook") which stated that evidence of five years of use and occupancy had to be filed within six years of the original filing of this application. The Handbook, however, stated an exception to this rule by explaining that "applicants filing prior to 1958 had until 1964 to file proof of use and occupancy." Docket No. 66 at 10 (referring to BLM "Native Allotment Handbook" at II–17). Lord contends that his application was filed in 1957 and was rejected in 1963, and therefore, the BLM did not follow the exception in its own handbook which would have allowed him until 1964 to provide proof of use and occupancy. Thus, Lord argues that the BLM violated its own "statutory life" rule.

*Application of Equitable Tolling or Estoppel:*

 Lord argues that if the statute of limitations applied to him, it was equitably tolled. The government responds that the statute of limitations is jurisdictional, precluding "equitable tolling." Docket No. 56. The government is correct that a claim brought within the federal statute of limitations, such as the limitation pursuant to 28 U.S.C. § 2401(a), was at one time considered to be a jurisdictional prerequisite. *See Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *see also United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986) ("In particular, '[w]hen waiver legislation contains a statute of limitations, the limitation provision constitutes a condition on the waiver of sovereign immunity.' ") (quoting *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)). However, more recently, the Supreme Court has seriously undermined this authority and has held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990). Several Ninth Circuit panels have interpreted the *Irwin* holding to mean that the federal statutes of limitations are no longer jurisdictional in nature.[4] Therefore, instead of addressing the government's motion regarding the statute of limitations issue as a 12(b)(1) motion to dismiss for lack of jurisdiction, this Court must address it as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

Lord filed his complaint in this action on May 24, 1994. If his claim accrued more than six years before this suit was filed, or if the statute of limitations was not tolled, Lord's claim is barred.

Under federal law, a cause of action accrues when plaintiff knew or should have known of the wrong and was able to commence an action based upon that wrong. *Shiny Rock Mining Corp. v. United States,* 906 F.2d 1362, 1364 (9th Cir.1990).

 The Ninth Circuit has distinguished between equitable tolling and equitable estoppel by stating that "equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's

---

4. A Ninth Circuit panel in *Fadem v. United States,* 52 F.3d 202 (9th Cir.1995) concludes that after the Supreme Court's decision in *Irwin* " 'federal statutory time limitations on suits against the government are *not* jurisdictional in nature.' " *Fadem,* 52 F.3d at 206 (citing *Washington v. Garrett,* 10 F.3d 1421, 1437 (9th Cir.1993)); *see also Capital Tracing, Inc. v. United States,* 63 F.3d 859, 861 n. 3 (9th Cir.1995) (because of the *Irwin* holding, "[w]e thus treat the district court's action as a dismissal for failure to state a claim, rather than as a dismissal for lack of subject matter jurisdiction."); *but see Nesovic v. United States,* 71 F.3d 776, 778 (9th Cir.1995) (recognizing that federal statutory time limitations are jurisdictional and will bar an action *"unless* [plaintiff] can find a recognized reason to avoid this result." [such as equitable tolling and estoppel] ) (citing *Irwin* ).

It appears that some panels of the Ninth Circuit have differing views as to how far the *Irwin* holding should be stretched. On the one hand, the *Fadem* and *Garrett* panels interpret the *Irwin* holding to mean that federal statutory time limitations are no longer jurisdictional in nature. On the other hand, the *Nesovic* panel still recognizes that the federal statutory time limitations are jurisdictional in nature but can be subject to equitable tolling and estoppel. Although the *Nesovic* decision is later in time, the other panels seem to apply the *Irwin* decision more accurately. It is immaterial that *Nesovic* addressed the same statute of limitations that is involved in this case, 28 U.S.C. § 2401(a), while *Garrett, Fadem, Supermail,* and *Capital Tracing* all refer to other statutes of limitations. Rather, it is important to note that the *Irwin* holding was not limited to a specific statute of limitation but was intended to apply generally to suits against the government. *See Irwin,* 498 U.S. at 95, 111 S.Ct. at 457 ("[w]e think that this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government.").

The Ninth Circuit panel in *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204 (9th Cir.1995) explained the procedural impact of the *Irwin* ruling by pointing out that now that the rebuttable presumption of equitable tolling applied to federal statutory time limitations, the issue is no longer jurisdictional and therefore the issue should be raised through a "Rule 12(b)(6) motion to dismiss for failure to state a claim, not a Rule 12(b)(1) motion to dismiss for lack of jurisdiction." *Supermail,* 68 F.3d at 1206 n. 2.

statements or conduct in failing to bring suit." *Stitt v. Williams,* 919 F.2d 516, 522 (9th Cir.1990). Because Lord has consistently argued that he did not receive any information from the government until 1994 regarding his application, it will be difficult for Lord to argue that the government somehow lulled him into not filing suit in time. Therefore, it does not appear that the doctrine of equitable estoppel applies to this case.

In addition, if Lord received adequate notice of the rejection of his claim, the doctrine of equitable tolling should not apply to the instant case either. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *see also Scholar v. Pacific Bell,* 963 F.2d 264, 267–68 (9th Cir.), *cert. denied,* 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992) (applying the doctrine "sparingly" and only in "extreme cases" such as when a plaintiff filed defective pleadings, was tricked by an adversary into letting the time period elapse, or when the EEO's notice was inadequate).

■ ·The question of equitable tolling, the question of when Lord's action for judicial review accrued and the question whether Lord received procedural due process all collapse into a single question: Did Lord receive adequate notice? The issue of notice blends with the due process concerns expressed in *Pence v. Kleppe,* 529 F.2d 135 (9th Cir.1976) and *Aguilar v. United States,* 474 F.Supp. 840 (D.Alaska 1979). In determining whether Lord received adequate notice of the agency decision rejecting his application, the Court must consider the nature of the notice that he was sent. Although it is not binding on this Court, the Alaska Supreme Court has stated that the proper tailoring of notice to the capacities and circumstances of indigent bush residents requires the communication of substantially more information regarding the methods for responding and defending their interests than normally would be required. *Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352, 1357 (Alaska 1974); *see also Ogle v. Salamatof Native Association, Inc.* 906 F.Supp. 1321 (D.Alaska 1995)

(discussing notice under similar circumstances).

After *Irwin,* federal statutes of limitation are no longer jurisdictional. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990). Therefore, the government's motion to dismiss on the grounds that this action is barred by the applicable statute of limitations must be treated as a motion to dismiss for failure to state a claim under FED. R.CIV.P. 12(b)(6) instead of a motion to dismiss for lack of jurisdiction under FED. R.CIV.P. 12(b)(1). *See Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 n. 2 (9th Cir.1995). Furthermore, because this Court must consider material outside of the pleadings in order to determine whether Lord received sufficient notice of the rejection of his application to trigger the statute of limitations and satisfy due process or whether equitable tolling should apply, the motion under FED.R.CIV.P. 12(b)(6) must be deemed a motion under FED.R.CIV.P. 56. *Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *see also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (1990). The existing record will not permit resolution of the notice issues.

*State of Alaska as an Indispensable Party:*

■ The government contends that this action should nevertheless be dismissed because the State of Alaska is an indispensable party. In determining whether a non-party is indispensable, the Court must first decide whether the absent party is "necessary" to the action and then must decide whether the absent party is " 'indispensable' so that in 'equity and good conscience' the action should be dismissed." *Confederated Tribes v. Lujan,* 928 F.2d 1496, 1498 (9th Cir.1991) (quoting *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir.1990)). When addressing whether an absent party is necessary, two inquiries must be made: (1) whether complete relief is possible between the parties already in the action; and (2) whether the absent party has a legally protected interest in the outcome of the action. *See* FED.R.CIV.P. 19(a). Although this two-step process is the general test, there is no pre-

cise formula in determining whether a party is necessary and "[t]he determination is heavily influenced by the facts and circumstances of each case." *Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982).

■ The State is not a necessary party to this action. Lord is seeking an order that the government has an obligation to adjudicate his application and, depending on the adjudication, to seek reconveyance[5] from the State. *See* Docket No. 48 (Lord's second amended complaint); *see also Harrison v. Hickel,* 6 F.3d 1347, 1353 (9th Cir.1993); *see also Aguilar v. United States,* 474 F.Supp. 840, 847 (D.Alaska 1979) ("[i]f the defendant [the United States] has mistakenly or wrongfully conveyed land to the State of Alaska to which plaintiffs have a superior claim, it is the responsibility of the defendant to recover that land."); *see also Cramer v. United States,* 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923). The issues between Lord and the government do not require the State's presence for their adjudication. The State will not be prejudiced by a ruling in this case. The government argues that if the State is not made a party inconsistent results are possible, *i.e.,* that the government might be unsuccessful in recovering the land from the State in a separate action after having been found liable to Lord. If the government fears inconsistent remedies, it has a ready protection in FED.R.CIV.PROC. 14 since it could bring the State in as a third-party defendant. Dismissal of this action is not warranted.

**IT IS THEREFORE ORDERED:**

This Court has jurisdiction over this action pursuant to 25 U.S.C. § 345 and 28 U.S.C. § 1353. In addition, the six-year statute of limitations pursuant to 28 U.S.C. § 2401(a) applies to this case. The State of Alaska is not an indispensable party.

On the present record, this Court is not prepared to convert a FED.R.CIV.P. 12 motion into a FED.R.CIV.P. 56 motion because the parties have not squarely addressed the equitable tolling issue. Equitable tolling of the statute of limitations is a viable issue which

cannot be resolved on a motion to dismiss. There still remain disputed facts regarding whether Lord received adequate notice from the government which would have triggered the applicable six-year statute of limitations and would have satisfied Lord's due process rights. The adequacy of the notice is the linchpin of whether this action is barred altogether. The government's motion to dismiss at **Docket No. 56** and Lord's motion for summary judgment at **Docket No. 66** are both **DENIED.**

---

**5.** The United States can sue the State without regard to the Eleventh Amendment. *See United States v. Mississippi,* 380 U.S. 128, 140–41, 85 S.Ct. 808, 814–15 (1965).