UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30943
_____

FIRST NATIONAL BANK, ST. MARY PARISH,

Plaintiff,

versus

GENINA MARINE SERVICES, INC.; AGATHA RIZZO KORNEGAY; THOMAS
WILSON BRIGHTMAN KORNEGAY, JR., also known as Wilson B.
Kornegay, on behalf of Thomas Wilson Brightman Kornegay, Sr.,

Defendants/Third-Party Plaintiffs/Appellants,

versus

FARMERS HOME ADMINISTRATION,

Third-Party Defendant/Appellee.

_____

Appeal from the United States District Court for the
Western District of Louisiana, Lafayette
_____
February 27, 1998

Before POLITZ, Chief Judge, BENAVIDES and PARKER, Circuit Judges.

BENAVIDES, Circuit Judge:

The principal issue presented in this appeal is whether the
Farmers Home Administration ("FmHA") has waived its sovereign
immunity with respect to the claims of a defendant in a suit on a
note brought by a bank to which the FmHA endorsed a promissory note
that the FmHA purchased under the terms of a guaranty agreement.

The appeal also raises a threshold question regarding this court's jurisdiction to entertain an appeal of the order dismissing appellants' claims against the FmHA. We conclude that this court has jurisdiction and affirm the district court's dismissal of Genina's claims against the FmHA.

I.

*Factual Background*

Genina Marine Services, Inc. ("Genina") was a family business owned by Wilson B. ("Bright") and Agatha Kornegay. In 1978, Genina[1] borrowed $985,000 from First National Bank in St. Mary Parish ("FNB" or "the bank"). Genina's obligation to FNB was evidenced by two promissory notes. One note, representing 90% of the amount borrowed ($886,500), was guaranteed by the FmHA under the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921-2006.[2] The second note, representing the remaining 10% of Genina's indebtedness ($98,500), was not guaranteed.[3] Both notes were

---

[1] At that time, the company was called "Genina, Inc." The loan documents were modified on June 8, 1987, to reflect that the corporation had been renamed "Genina Marine Services, Inc."

[2] When Congress reorganized the Department of Agriculture in 1994, *see* Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. No. 103-354, 108 Stat. 3178 (1994), the FmHA was dissolved, and the Rural Economic and Community Development Service assumed the responsibilities of the FmHA's Business and Industry Division. For ease of reference, we refer to the agency as "the FmHA" throughout this opinion.

[3] Under Department of Agriculture regulations, a debt like Genina's that is divided into guaranteed and unguaranteed notes at the loan closing is governed by the "multi-note system." 7 C.F.R. § 1980.119(c)(1).

2

secured by a fleet mortgage on three of Genina's vessels, a chattel mortgage on two of Genina's vehicles, and a mortgage on the Kornegay family home. Two agreements, a Loan Note Guarantee and a Lender's Agreement, governed the relationship between the bank and the FmHA.

On March 1, 1979, FNB sold the FmHA-guaranteed note to Pequot Partners. Genina defaulted on both notes in 1983. After the default, Pequot Partners made a written demand on FNB to repurchase the note. When the bank declined, FmHA purchased the note as it was obligated to do under the Loan Note Guarantee and the Lender's Agreement. FNB remained the holder of the unguaranteed note and continued to act as servicing agent on the guaranteed note after the FmHA purchased the note.

Wilson Kornegay died in 1988. According to appellants, the FmHA then entered into negotiations with Genina during which Genina agreed to sell, at its own expense, the three vessels securing the loan under the fleet mortgage in return for the FmHA's agreement not to foreclose on the Kornegay home. Genina alleges that it sold the vessels in reliance on this agreement. The proceeds from those sales were applied to Genina's indebtedness on the guaranteed and the unguaranteed notes. Genina alleges that the FmHA then demanded an additional cash payment if Genina wished to avoid foreclosure on the home. The FmHA denies that it agreed not to pursue foreclosure if Genina sold the vessels.

On or about August 30, 1991, the FmHA assigned the note to FNB without recourse.

## II.

*Procedural History*

FNB brought suit on both notes in Louisiana state court against Genina, Agatha Kornegay, and Thomas Kornegay, Jr., as administrator of Wilson Kornegay's estate (collectively "Genina"), seeking to foreclose on the Kornegay home. Appellants filed a third-party petition against the FmHA, alleging that Genina had reached an accord and satisfaction with the FmHA, that FNB's suit breached that accord (and in doing so negligently and intentionally inflicted emotional distress on Mrs. Kornegay), and that the FmHA remains the true owner of the note.

The FmHA removed the suit to federal district court and moved to dismiss Genina's claims against it based on sovereign immunity and defective service of process. The district court granted the FmHA's motion to dismiss without specifying grounds and remanded the remaining claims to state court. Genina timely filed a notice of appeal. This court vacated and remanded, instructing the district court to state its reasons for dismissal. On remand, the district court stated that it had dismissed the claims against the FmHA because it "is an unincorporated department of the federal government and, as such, is not a legal entity and may not be sued." Genina appealed from this clarified judgment.

## III.

The threshold issue in this appeal is whether this court has jurisdiction to review the dismissal order, which was contained in

4

the same order remanding the remaining claims to state court. Although this court lacks jurisdiction to review a remand order that is based on 28 U.S.C. § 1447(c), *see* 28 U.S.C. § 1447(d),[4].

Courts of appeals may, however, review a remand order that is based on substantive decision on the merits of a collateral issue rather than matters of jurisdiction. *Regis Assocs. v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 194 (6th Cir. 1990).   [5] we may review any aspect of a judgment containing a remand order that is "distinct and separable from the remand proper." *John G. & Marie Stella Kenedy Mem. Found. v. Mauro*, 21 F.3d 667, 670 (5th Cir. 1994) (citing *City of Waco v. United States Fidelity & Guar. Co.*, 293 U.S. 140, 142-43, 55 S. Ct. 6, 6-7 (1934)).   An order is "separable" if it precedes the remand order "in logic and fact" and is "conclusive." *Linton v. Airbus Industrie*, 30 F.3d 592, 597 (5th Cir. 1994) (citing *City of Waco*).   In this context, a district court action is conclusive if "it will have the preclusive effect of being functionally unreviewable in state court."   *Id.* at 597. For example, in *City of Waco*, the Supreme Court held that the court of appeals had jurisdiction to review the dismissal of a diverse third-party defendant whose dismissal destroyed diversity jurisdiction even though the rest of the case was remanded to state court in the same judgment.   293 U.S. at 143-44, 55 S. Ct. at 7.

---

[4]  We generally lack jurisdiction to review remand orders based on lack of subject matter jurisdiction or procedural defects.  *Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 761 (5th Cir. 1994).

5

Like the order in *City of Waco*, the dismissal of Genina's third-party claims against the FmHA is distinct and separable from the remand itself. The dismissal will have preclusive effect in the state-court litigation and will not be subject to review there. We conclude, therefore, that, under *City of Waco* and its progeny, we have jurisdiction to review the district court's dismissal of Genina's claims against the FmHA.

Accordingly, we turn to the issue of the FmHA's sovereign immunity.

IV.

We start with the basic premise that the federal government is immune from suit unless it consents to be sued. *EEOC v. First National Bank*, 614 F.2d 1004, 1007 (5th Cir. 1980). The United States can consent to be sued "either by specific statutory consent or by instituting a suit as to which a defendant may plead matters in recoupment." *Id.* (citations omitted). Genina argues that its claims against the FmHA fall within the latter category of consent to suit.

In *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967), this court first recognized that by filing suit the government effects a limited waiver of sovereign immunity as to the defendant's recoupment claims:

> Our conclusion is that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment — arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claims but not the extent of a judgment in

6

> the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or . . . exceeding the amount of the government's claims. . . .

386 F.2d at 488. Genina argues that, under *Frederick,* the FmHA waived its sovereign immunity as to Genina's claims when the bank brought suit against Genina because the FmHA's endorsement of the guaranteed note to the bank was a sham.[6] Genina urges that its third-party claims against the FmHA should be allowed under *Frederick*, even though the FmHA has not actually filed suit against it. Genina has not cited and our research has not uncovered any decision in which a court has applied the recoupment exception under these or similar circumstances. We decline to do so under the facts presented in this case.

Viewed as an isolated transaction, the FmHA's endorsement of the note to the bank is arguably suspect. Genina presented evidence that FNB informed the FmHA that it had either to join a foreclosure suit against the Kornegays or to endorse the note over to FNB so that FNB could proceed with foreclosure. Indeed, Theodore Panchalk, the chief of the FmHA's Business and Industry

---

[6] Although the government provides extensive briefing as to why Genina cannot bring suit against it under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, or the Tucker Act, 28 U.S.C. § 1491, Genina specifically disclaims any attempt to use these avenues for bringing suit against the government and instead relies exclusively on *Frederick*. A recoupment claim within the scope of *Frederick* need not also fall within another statutory waiver of sovereign immunity. *See Frederick*, 386 F.2d at 488 (noting that waiver of sovereign immunity can be by statute or by institution of suit); *United States v. Johnson*, 853 F.2d 619, 621 (8th Cir. 1988)(holding that when the government waives sovereign immunity as to matters in recoupment, "it does so even as to those claims that ordinarily are barred by the FTCA").

Division in Louisiana, testified in his deposition that he had endorsed the note to the bank for "litigation purposes."[7]  But the endorsement must not be viewed in isolation.  Rather, it must be considered in the context of the pre-existing agreements between the lender and the FmHA as well as the statutory and regulatory framework within which they were operating.

Genina's guaranteed loan was made under the Consolidated Farm and Rural Development Act, which enables the Secretary of Agriculture, acting through the FmHA, *see* 7 U.S.C. § 1981, to make or guarantee loans for the purpose of "improving, developing, or financing business, industry, and employment and improving the economic and environmental climate in rural communities . . . ." *Id.* § 1932(a).  The Act authorizes the Secretary of Agriculture "to make such rules and regulations, [and] prescribe the terms and conditions for making or insuring loans, security instruments and agreements . . . ."  *Id.* § 1989.  Under this authority, the Secretary of Agriculture has promulgated extensive regulations to govern the FmHA's loan guarantee programs and has mandated the form of the Loan Note Guarantee and the Lender's Agreement.  *See* 7 C.F.R. pt. 1980, subpt. A, app. A.

---

[7]  Although the FmHA's endorsement to the bank does not appear in the record, there is no dispute that Panchalk endorsed the note as follows:

Without recourse, pay to the order of The First National Bank in St. Mary Parish.
FARMERS HOME ADMINISTRATION
BY:  /s/Theodore Panchalk
       Theodore Panchalk
       Chief, Business & Industry Division

8

Under the Loan Note Guarantee, the FmHA undertook three basic guaranty obligations. First, the FmHA guaranteed the borrower's obligations to the lender by agreeing to indemnify the lender for any loss sustained on the guaranteed note or the guaranteed principal plus interest due, whichever sum was less. Second, the FmHA agreed to indemnify a holder of an FmHA-guaranteed note for any loss sustained as well as interest due on the guaranteed note. Third, the FmHA agreed to purchase the guaranteed note from a subsequent holder in the event of default. Under the Loan Note Guarantee and the Lender's Agreement, a subsequent holder of the note may make a written demand on the bank to repurchase the note; if the bank chooses not to repurchase the note, the FmHA is obligated to do so. In this case, the FmHA honored its Loan Note Guarantee by purchasing the guaranteed note from Pequot Partners after Genina defaulted and after the bank declined to repurchase the note.

Although Pequot Partners succeeded to FNB's rights under the Loan Note Guarantee when it purchased the note from FNB, FNB retained all of its obligations to the FmHA under the Lender's Agreement and the Loan Note Guarantee. Under the Lender's Agreement, when Genina defaulted on the guaranteed note and liquidation became necessary, FNB was obligated to conduct the liquidation unless the FmHA chose to do so itself.[8] In this case,

---

[8] The Lender's Agreement also provides that "all rights under the security instruments (including personal and/or corporate guarantees) will remain with the Lender and in all cases inure to its and the Government's benefit notwithstanding any contrary provisions of state law." This provision does not

9

the FmHA did not choose to conduct the liquidation.  Instead, the FmHA endorsed to FNB the note that the FmHA held as a result of its purchase under the guarantee agreement.  Department of Agriculture regulations allow the FmHA to endorse to the lender a promissory note held by the FmHA to facilitate "servicing actions."  7 C.F.R. § 1980.470(D), administrative.[9]  The FmHA endorsed the note to FNB under the authority of this provision.

Genina makes much of the fact that correspondence between the FmHA and the lender indicates that the FmHA expects to receive proceeds from the bank's suit against Genina.  According to Genina, this shows that the FmHA is the true owner of the note.  The note, however, is not the source of the bank's obligation to the FmHA; the Lender's Agreement is.  The Lender's Agreement gives the FmHA

---

affect our analysis in this case; the mortgage belonged to the bank when it brought suit, either under this provision or under Louisiana law.  *See* La. Civ. Code Ann. art. 2645 (West 1996) ("The assignment of a right includes its accessories such as security rights.").

[9]  The regulation states:

If the loan was closed with the multi-note option, the lender may need to possess all notes to take some servicing actions.  In these situations when FmHA or its successor agency under Public Law 103-354 is holder of some of the notes, the State Director may endorse the notes back to the lender after the State Director has sought the advice and guidance of OGC [Office of General Counsel], provided a proper receipt is received from the lender which defines the reason for the transfer.

7 C.F.R. § 1980.470(D), administrative.  Although Genina complains that the chief of the Business and Industry Division in Louisiana rather than the State FmHA Director endorsed the note, the regulations allow the State Director to delegate responsibilities to the state's chief of the Business and Industry Division.  7 C.F.R. §§ 1900.2, 1900.5, and Theodore Panchalk testified in his deposition that he had authority to endorse the note to the bank.

the right to recover any losses it has paid under the guarantee. In this case, the loss that the FmHA paid under the guarantee was the amount for which it purchased the note from Pequot Partners after Genina's default. Thus, the FmHA will receive a portion of the proceeds, if any, from the bank's suit against Genina, not because the endorsement of the note to the bank was a sham, but because the FmHA is entitled to reimbursement under the Lender's Agreement for any losses it has paid under the Loan Note Guarantee.

Under these circumstances, we conclude that *Frederick* does not permit Genina to assert third-party claims against the FmHA in the suit brought FNB. The mere fact that the note passed through the FmHA's hands does not give rise to a waiver of sovereign immunity.[10]

V.

For the foregoing reasons, we AFFIRM the judgment of the district court.[11]

---

[10] Although we have held against Genina on the sovereign immunity issue, the facts and circumstances Genina relied upon to argue against sovereign immunity here may work to Genina's advantage in the state court proceeding. If, as Genina alleges, the bank was aware of Genina's potential recoupment claims against the FmHA, that may affect the bank's ability to establish that it was a holder in due course. *See* Act of 1974, No. 92, § 1, *reprinted in* La. Rev. Stat. Ann. tit. 10 app. § 3-302 (West 1993). Under the Louisiana law applicable when the note was endorsed, if the bank was not a holder in due course, it may have taken the note subject to some defenses that Genina could have asserted against the FmHA had the FmHA brought the suit. *See* Act of 1974, No. 92, § 1, *reprinted in* La. Rev. Stat. Ann. tit. 10 app. § 3-306 (West 1993).

[11] The parties disagree regarding whether this court's prior decision, which vacated the district court's first order, affected the portion of that order remanding the remaining claims to state court. We conclude that it did not. We have jurisdiction to review an order of remand only if the district court affirmatively states a non-§ 1447(c) ground for remand.

11

*Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 409 (5th Cir. 1991).  The district court did not do so in this case. Thus, we will not construe this court's prior decision, which did not explicitly purport to vacate the remand order, to have implicitly undertaken an extrajurisdictional review.